OPINION OF THE COURT
Graffeo, J.
Defendant, a 16-year-old high school student, anonymously posted sexual information about fellow classmates on a publicly- *4 accessible Internet website. He was criminally prosecuted for “cyberbullying” under a local law enacted by the Albany County Legislature. We are asked to decide whether this cyberbullying statute comports with the Free Speech Clause of the First Amendment.
I
Bullying by children in schools has long been a prevalent problem but its psychological effects were not studied in earnest until the 1970s (see Hyojin Koo, A Time Line of the Evolution of School Bullying in Differing Social Contexts, 8 Asia Pac Educ Rev 107 [2007], available at http://files.eric.ed.gov/fulltext/ EJ768971.pdf). Since then, “[b]ullying among school-aged youth” has “increasingly be[en] recognized as an important problem affecting well-being and social functioning,” as well as “a potentially more serious threat to healthy youth development” (Tonja R. Nansel et al., Bullying Behaviors among US Youth, 285 JAMA 2094 [2001], available at http:// jama.jamanetwork.com/article.aspx?articleid=193774). At its core, bullying represents an imbalance of power between the aggressor and victim that often manifests in behaviors that are “verbal (e.g., name-calling, threats), physical (e.g., hitting), or psychological (e.g., rumors, shunning/exclusion)” (id. at 2094; see Koo at 112). Based on the recognized harmful effects of bullying, many schools and communities now sponsor anti-bullying campaigns in order to reduce incidents of such damaging behaviors.
Educators and legislators across the nation have endeavored to craft policies designed to counter the adverse impact of bullying on children. New York, for example, enacted the “Dignity for All Students Act” in 2010 (see L 2010, ch 482, § 2; Education Law § 10 et seq.), declaring that our State must “afford all students in public schools an environment free of discrimination and harassment” caused by “bullying, taunting or intimidation” (Education Law § 10). In furtherance of this objective, the State prohibited discrimination and bullying on public school property or at school functions (see Education Law § 12 [1]). The Act relied on the creation and implementation of school board policies to reduce bullying in schools through the appropriate training of personnel, mandatory instruction for students on civility and tolerance, and reporting requirements (see Education Law § 13). The Act did not criminalize bullying behaviors; instead, it incorporated educational penalties such as suspension from school.
*5 Despite these efforts, the problem of bullying continues, and has been exacerbated by technological innovations and the widespread dissemination of electronic information using social media sites. The advent of the Internet with “twenty-four hour connectivity and social networking” means that “[b]ullying that begins in school follows students home every day” and “bullying through the use of technology can begin away from school property” (L 2012, ch 102, § 1). Regardless of how or where bullying occurs, it “affects the school environment and disrupts the educational process, impeding the ability of students to learn and too often causing devastating effects on students’ health and well-being” (id.; see e.g. American Psychiatric Association, Resolution on Bullying among Children & Youth [2004], available at https://www.apa.org/about/policy/bullying.pdf). The use of computers and electronic devices to engage in this pernicious behavior is commonly referred to as “cyberbullying” (see e.g. Education Law § 11 [8]; L 2012, ch 102, § 1; Simone Robers et al., Indicators of School Crime & Safety: 2012 at 44, National Center for Education Statistics, United States Departments of Education & Justice [2013], available at http://nces.ed.gov/ pubs2013/2013036.pdf). Unlike traditional bullying, victims of cyberbullying can be “relentlessly and anonymously attack[ed] twenty-four hours a day for the whole world to witness. There is simply no escape.”[1]
The Dignity for All Students Act did not originally appear to encompass cyberbullying, particularly acts of bullying that occur off school premises. As the ramifications of cyberbullying on social networking sites spilled into the educational environment, in 2012, the state legislature amended the Act to expand the types of prohibited bullying conduct covered by its provisions. It added a proscription on bullying that applied to “any form of electronic communication” (Education Law § 11 [8]), including any off-campus activities that “foreseeably create a risk of substantial disruption within the school environment, where it is foreseeable that the conduct, threats, intimidation or abuse might reach school property” (Education Law § 11 [7]).
Before the addition of the 2012 amendments to the Dignity for All Students Act, elected officials in Albany County decided to tackle the problem of cyberbullying. They determined there was a need to criminalize such conduct because the “State *6 Legislature ha[d] failed to address th[e] problem” of “nonphysical bullying behaviors transmitted by electronic means” (Local Law No. 11 [2010] of County of Albany § 1). In 2010, the Albany County Legislature adopted a new crime — the offense of cyberbullying — which was defined as
“any act of communicating or causing a communication to be sent by mechanical or electronic means, including posting statements on the internet or through a computer or email network, disseminating embarrassing or sexually explicit photographs; disseminating private, personal, false or sexual information, or sending hate mail, with no legitimate private, personal, or public purpose, with the intent to harass, annoy, threaten, abuse, taunt, intimidate, torment, humiliate, or otherwise inflict significant emotional harm on another person” (id. § 2).
The provision outlawed cyberbullying against “any minor or person” situated in the county (id. § 3).[2] Knowingly engaging in this activity was deemed to be a misdemeanor offense punishable by up to one year in jail and a $1,000 fine (see id. § 4). The statute, which included a severability clause (see id. § 7), became effective in November 2010.
n
A month later, defendant Marquan M., a student attending Cohoes High School in Albany County, used the social networking website “Facebook” to create a page bearing the pseudonym “Cohoes Flame.” He anonymously posted photographs of high-school classmates and other adolescents, with detailed descriptions of their alleged sexual practices and predilections, sexual partners and other types of personal information. The descriptive captions, which were vulgar and offensive, prompted responsive electronic messages that threatened the creator of the website with physical harm.
A police investigation revealed that defendant was the author of the Cohoes Flame postings. He admitted his involvement and was charged with cyberbullying under Albany County’s local law. Defendant moved to dismiss, arguing that the statute violated his right to free speech under the First Amendment. *7 After City Court denied defendant’s motion, he pleaded guilty to one count of cyberbullying but reserved his right to raise his constitutional arguments on appeal. County Court affirmed, concluding that the local law was constitutional to the extent it outlawed such activities directed at minors, and held that the application of the provision to defendant’s Facebook posts did not contravene his First Amendment rights. A Judge of this Court granted defendant leave to appeal (21 NY3d 1043 [2013]).
m
Defendant contends that Albany County’s cyberbullying law violates the Free Speech Clause of the First Amendment because it is overbroad in that it includes a wide array of protected expression, and is unlawfully vague since it does not give fair notice to the public of the proscribed conduct. The County concedes that certain aspects of the cyberbullying law are invalid but maintains that those portions are severable, rendering the remainder of the act constitutional if construed in accordance with the legislative purpose of the enactment. Interpreted in this restrictive manner, the County asserts that the cyberbullying law covers only particular types of electronic communications containing information of a sexual nature pertaining to minors and only if the sender intends to inflict emotional harm on a child or children.
Under the Free Speech Clause of the First Amendment, the government generally “has no power to restrict expression because of its message, its ideas, its subject matter, or its content” (United States v Stevens, 559 US 460, 468 [2010] [internal quotation marks omitted]). Consequently, it is well established that prohibitions of pure speech must be limited to communications that qualify as fighting words, true threats, incitement, obscenity, child pornography, fraud, defamation or statements integral to criminal conduct (see United States v Alvarez, 567 US —, —, 132 S Ct 2537, 2544 [2012]; Brown v Entertainment Merchants Assn., 564 US —, —, 131 S Ct 2729, 2733 [2011]; People v Dietze, 75 NY2d 47, 52 [1989]). Outside of such recognized categories, speech is presumptively protected and generally cannot be curtailed by the government (see United States v Alvarez, 567 US at —, 132 S Ct at 2543-2544; Brown v Entertainment Merchants Assn., 564 US at —, 131 S Ct at 2734; United States v Stevens, 559 US at 468-469).
Yet, the government unquestionably has a compelling interest in protecting children from harmful publications or materials *8 (see Reno v American Civil Liberties Union, 521 US 844, 875 [1997]; see also Brown v Entertainment Merchants Assn., 564 US at —, 131 S Ct at 2736; see generally Bethel School Dist. No. 403 v Fraser, 478 US 675, 682 [1986]). Cyberbullying is not conceptually immune from government regulation, so we may assume, for the purposes of this case, that the First Amendment permits the prohibition of cyberbullying directed at children, depending on how that activity is defined (see generally Brown v Entertainment Merchants Assn., 564 US at —, —, 131 S Ct at 2735-2736, 2741; cf. United States v Elonis, 730 F3d 321 [3d Cir 2013] [affirming conviction premised on threatening Facebook posts], cert granted 573 US —, 134 S Ct 2819 [June 16, 2014]). Our task therefore is to determine whether the specific statutory language of the Albany County legislative enactment can comfortably coexist with the right to free speech.[3]
Challenges to statutes under the Free Speech Clause are usually premised on the overbreadth and vagueness doctrines. A regulation of speech is overbroad if constitutionally-protected expression may be “chilled” by the provision because it facially “prohibits a real and substantial amount of’ expression guarded by the First Amendment (People v Barton, 8 NY3d 70, 75 [2006]). This type of facial challenge, which is restricted to cases implicating the First Amendment, requires a court to assess the wording of the statute — “without reference to the defendant’s conduct” (People v Stuart, 100 NY2d 412, 421 [2003]) — to decide whether “a substantial number of its applications are unconstitutional, judged in relation to the statute’s plainly legitimate sweep” (United States v Stevens, 559 US at 473 [internal quotation marks omitted]). A law that is overbroad cannot be validly applied against any individual (see People v Stuart, 100 NY2d at 421, citing Tribe, American Constitutional Law § 12-32 at 1036 [2d ed 1988]). In contrast, a statute is seen by the courts as vague if “it fails to give a citizen adequate notice of the nature of proscribed conduct, and permits arbitrary and discriminatory enforcement” (People v Shack, 86 NY2d 529, 538 [1995]). Hence, the government has the burden of demonstrating that a regulation of speech is constitutionally permissible (see United States v Playboy Entertainment Group, Inc., 529 US 803, 816-817 [2000]; cf. People v Davis, 13 NY3d 17, 23 [2009]).
*9 A First Amendment analysis begins with an examination of the text of the challenged legislation since “it is impossible to determine whether a statute reaches too far without first knowing what the statute covers” (United States v Williams, 553 US 285, 293 [2008]). In this regard, fundamental principles of statutory interpretation are controlling. Chief among them is the precept that “clear and unequivocal statutory language is presumptively entitled to authoritative effect” (People v Suber, 19 NY3d 247, 252 [2012]; see e.g. People v Williams, 19 NY3d 100, 103 [2012]).
Based on the text of the statute at issue, it is evident that Albany County “create[d] a criminal prohibition of alarming breadth” (United States v Stevens, 559 US at 474). The language of the local law embraces a wide array of applications that prohibit types of protected speech far beyond the cyberbullying of children (see id. at 473-474; People v Barton, 8 NY3d at 75). As written, the Albany County law in its broadest sense criminalizes “any act of communicating ... by mechanical or electronic means . . . with no legitimate . . . personal . . . purpose, with the intent to harass [or] annoy . . . another person.” On its face, the law covers communications aimed at adults, and fictitious or corporate entities, even though the county legislature justified passage of the provision based on the detrimental effects that cyberbullying has on school-aged children. The county law also lists particular examples of covered communications, such as “posting statements on the internet or through a computer or email network, disseminating embarrassing or sexually explicit photographs; disseminating private, personal, false or sexual information, or sending hate mail.” But such methods of expression are not limited to instances of cyberbullying — the law includes every conceivable form of electronic communication, such as telephone conversations, a ham radio transmission or even a telegram. In addition, the provision pertains to electronic communications that are meant to “harass, annoy . . . taunt . . . [or] humiliate” any person or entity, not just those that are intended to “threaten, abuse . . . intimidate, torment ... or otherwise inflict significant emotional harm on” a child. In considering the facial implications, it appears that the provision would criminalize a broad spectrum of speech outside the popular understanding of cyberbullying, including, for example: an email disclosing private information about a corporation or a telephone conversation meant to annoy an adult.
*10 The County admits that the text of thé statute is too broad and that certain aspects of its contents encroach on recognized areas of protected free speech. Because the law “imposes a restriction on the content of protected speech, it is invalid unless” the County “can demonstrate that it passes strict scrutiny— that is, unless it is justified by a compelling government interest and is narrowly drawn to serve that interest” (Brown v Entertainment Merchants Assn., 564 US at —, 131 S Ct at 2738). For this reason, the County asks us to sever the offending portions and declare that the remainder of the law survives strict scrutiny. What remains, in the County’s view, is a tightly circumscribed cyberbullying law that includes only three types of electronic communications sent with the intent to inflict emotional harm on a child: (1) sexually explicit photographs; (2) private or personal sexual information; and (3) false sexual information with no legitimate public, personal or private purpose.
It is true, as the County urges, that a court should strive to save a statute when confronted with a Free Speech challenge (see e.g. People ex rel. Alpha Portland Cement Co. v Knapp, 230 NY 48, 62-63 [1920], cert denied 256 US 702 [1921]). But departure from a textual analysis is appropriate only if the statutory language is “fairly susceptible” to an interpretation that satisfies applicable First Amendment requirements (People v Dietze, 75 NY2d at 52; see e.g. United States v Stevens, 559 US at 481). The doctrine of separation of governmental powers prevents a court from rewriting a legislative enactment through the creative use of a severability clause when the result is incompatible with the language of the statute (see e.g. People v Dietze, 75 NY2d at 52-53; Reno v American Civil Liberties Union, 521 US at 884-885). And special concerns arise in the First Amendment context — excessive judicial revision of an overbroad statute may lead to vagueness problems because
“the statutory language would signify one thing but, as a matter of judicial decision, would stand for something entirely different. Under those circumstances, persons of ordinary intelligence reading [the law] could not know what it actually meant” (People v Dietze, 75 NY2d at 53; see e.g. Houston v Hill, 482 US 451, 468-469 [1987]).
We conclude that it is not a permissible use of judicial authority for us to employ the severance doctrine to the extent suggested by the County or the dissent. It is possible to sever the portion of the cyberbullying law that applies to adults and other *11 entities because this would require a simple deletion of the phrase “or person” from the definition of the offense. But doing so would not cure all of the law’s constitutional ills. As we have recently made clear, the First Amendment protects annoying and embarrassing speech (see e.g. People v Golb, 23 NY3d 455 [2014]; People v Dietze, 75 NY2d at 52-53), even if a child may be exposed to it (see Brown v Entertainment Merchants Assn., 564 US at —, 131 S Ct at 2736), so those references would also need to be excised from the definitional section. And, the First Amendment forbids the government from deciding whether protected speech qualifies as “legitimate,” as Albany County has attempted to do (see Snyder v Phelps, 562 US —, —, 131 S Ct 1207, 1220 [2011], quoting Erznoznik v Jacksonville, 422 US 205, 210-211 [1975]; cf. People v Shack, 86 NY2d at 536-537).[4]
It is undisputed that the Albany County statute was motivated by the laudable public purpose of shielding children from cyberbullying. The text of the cyberbullying law, however, does not adequately reflect an intent to restrict its reach to the three discrete types of electronic bullying of a sexual nature designed to cause emotional harm to children. Hence, to accept the County’s proposed interpretation, we would need to significantly modify the applications of the county law, resulting in the amended scope bearing little resemblance to the actual language of the law. Such a judicial rewrite encroaches on the authority of the legislative body that crafted the provision and enters the realm of vagueness because any person who reads it would lack fair notice of what is legal and what constitutes a crime. Even if the First Amendment allows a cyberbullying statute of the limited nature proposed by Albany County, the local law here was not drafted in that manner. Albany County therefore has not met its burden of proving that the restrictions on speech contained in its cyberbullying law survive strict scrutiny.
*12 There is undoubtedly general consensus that defendant’s Facebook communications were repulsive and harmful to the subjects of his rants, and potentially created a risk of physical or emotional injury based on the private nature of the comments. He identified specific adolescents with photographs, described their purported sexual practices and posted the information on a website accessible world-wide. Unlike traditional bullying, which usually takes place by a face-to-face encounter, defendant used the advantages of the Internet to attack his victims from a safe distance, 24 hours a day, while cloaked in anonymity. Although the First Amendment may not give defendant the right to engage in these activities, the text of Albany County’s law envelops far more than acts of cyberbullying against children by criminalizing a variety of constitutionally-protected modes of expression. We therefore hold that Albany County’s Local Law No. 11 of 2010 — as drafted — is overbroad and facially invalid under the Free Speech Clause of the First Amendment.
Accordingly, the order of County Court should be reversed and the accusatory instrument dismissed.

. Naomi Harlin Goodno, Houi Public Schools Can Constitutionally Halt Cyberbullying, 46 Wake Forest L Rev 641, 641 (2011).

. The term “person” was broadly defined to include “any natural person, individual, corporation, unincorporated association, proprietorship, firm, partnership, joint venture, joint-stock association, or other entity or business organization of any kind” (Local Law No. 11 [2010] of County of Albany § 2).

. We offer no opinion on whether cyberbullying should be a crime or whether there are more effective means of addressing this societal problem outside of the criminal justice system.

. Contrary to the dissent’s position, People v Shack (86 NY2d 529 [1995]) and People v Stuart (100 NY2d 412 [2003]) are distinguishable because they addressed statutes that criminalized conduct — repeated telephone harassment and stalking — without regard to the content of any communication. Here, however, the Albany County law facially allows law enforcement officials to charge a crime based on the communicative message that the accused intends to convey, as evidenced by the fact that defendant was prosecuted because of the offensive words he wrote on Facebook.