[58 NYS3d 614]

BOARD OF TRUSTEES OF THE VILLAGE OF GROTON, Respondent, v NORFE J. PIRRO et al., Appellants.

In the Matter of NORFE J. PIRRO et al., Appellants, v TIM WILLIAMS, as Chief of Police of the Village of Groton, et al., Respondents, and BOARD OF TRUSTEES OF THE VILLAGE OF GROTON, Respondent.

Third Department, June 15, 2017

**APPEARANCES OF COUNSEL**

*Maines Firm, PLLC*, Ithaca (*Russell E. Maines* of counsel), for appellants.

*Barney, Grossman, Dubow and Troy, LLP*, Ithaca (*William J. Troy III* of counsel), for Board of Trustees of the Village of Groton, respondent.

*Sandra S. Park, Women's Rights Project American*, New York City, for American Civil Liberties Union Foundation and others, amici curiae.

**OPINION OF THE COURT**

GARRY, J.

Appeal from an order and judgment of the Supreme Court (Rumsey, J.), entered July 8, 2016 in Tompkins County, which, among other things, (1) denied defendants' motion to dismiss the complaint in the action, and (2) partially dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to enjoin respondents from enforcing the Village of Groton Property and Building Nuisance Law.

In April 2014, the Board of Trustees of the Village of Groton (hereinafter Board) passed Local Law No. 4 (2014) of the Village of Groton, entitled the "Property and Building Nuisance Law" (codified at Code of Village of Groton ch 152 [hereinafter Nuisance Law]). This law establishes multiple methods by which a property may be identified as a public nuisance, and includes a system by which points are assigned for various forms of proscribed conduct, ranging from two points for minor offenses to 12 points for a broad variety of Penal Law violations. A property accumulating 12 or more points within six months or 18 or more points within one year, or upon which

specified offenses occur, is deemed to be a public nuisance. Article II of the Nuisance Law provides that upon such a determination, the owner must be given written notice and an opportunity to abate the nuisance within specified time limits (*see* Local Law No. 4 [2014] of Village of Groton § 152-6 [C] [6]). Thereafter, the Board may authorize a civil action for relief including a permanent injunction, a temporary closing order or a penalty of up to $1,000 per day. Article III establishes administrative remedies to be pursued by Village officials, such as ordering the property's closure or suspending its certificate of use.

Norfe J. Pirro owns several residential rental properties, and is the managing member of Heritage Homestead Properties, LLC, which also owns residential rental properties in the Village. Several of these properties were formerly three- and four-unit apartment buildings, but have now been converted to "single room occupancy," such that as many as a dozen individual tenants may lease rooms within a single structure. In September 2014, the Village notified Pirro that two of his properties had accumulated enough points to constitute public nuisances pursuant to the Nuisance Law. In November 2014, Pirro was further notified that a property owned by Heritage had accumulated points and thus become a public nuisance. In September 2015, the Board commenced an action under the Nuisance Law against Pirro, Heritage, the three previously-mentioned properties and a fourth property owned by Heritage (hereinafter collectively referred to as defendants), naming the properties in rem. The complaint alleged that the four properties constituted unabated public nuisances and sought relief in the form of penalties, injunctive relief and either temporary closure or temporary receivership. In their answer, defendants set forth affirmative defenses alleging, as pertinent here, that the Nuisance Law conflicted with state law and violated the tenants' rights to seek redress of grievances from law enforcement, and further asserted a counterclaim. In November 2015, Pirro and Heritage commenced a proceeding pursuant to CPLR article 78 against the Board and others (hereinafter collectively referred to as respondents) seeking a permanent injunction enjoining enforcement of the Nuisance Law; respondents answered and asserted that this petition failed to state a cause of action. In the action, defendants thereafter moved to dismiss the complaint for failure to state a cause of action, and for summary judgment dismissing the complaint and in their favor upon their counterclaim.

In a combined ruling in the civil action and the CPLR article 78 proceeding, Supreme Court held that the portion of the Nuisance Law establishing administrative remedies was unconstitutional. The court thus partially granted the motion for summary judgment by severing article III from the Nuisance Law, and partially granted the petition by permanently enjoining respondents from enforcing that article. The court otherwise denied the motion and dismissed the petition. Defendants appealed from the order in the action.[1] This Court granted amicus curiae status to several interested groups.

Defendants and the amici curiae challenge the substantive validity of the Nuisance Law on multiple grounds, alleging, among other things, that it is preempted, unconstitutionally overbroad and otherwise unconstitutional. They further assert that the Nuisance Law is representative of similar municipal ordinances that have disproportionately negative impacts on crime victims, including victims of domestic violence, and that have not previously been tested in the appellate courts of this state (*see generally* Theresa Langley, Comment, *Living Without Protection: Nuisance Property Laws Unduly Burden Innocent Tenants and Entrench Divisions Between Impoverished Communities and Law Enforcement*, 52 Hous L Rev 1255 [2015]).

■ Initially, Supreme Court properly rejected defendants' argument that the Nuisance Law does not apply to them, based upon principles of statutory interpretation. We must construe the statutory language in such a manner as "to discern and give effect to the [drafter's] intention" (*Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities*, 19 NY3d 106, 120 [2012]; *see Matter of Level 3 Communications, LLC v Clinton County*, 144 AD3d 115, 117 [2016]). In doing so, we are to give effect to the plain meaning of clear and unambiguous language (*see Pultz v Economakis*, 10 NY3d 542, 547 [2008]), construe the provisions of the challenged law "together unless a contrary legislative intent is expressed, and . . . harmonize the related provisions in a way that renders them compatible" (*Matter of Liberius v New York City Health & Hosps. Corp.*, 129 AD3d 1170, 1171-1172 [2015] [internal quotation marks and citations omitted]).

---

1. Heritage and Pirro also filed a separate notice of appeal from the judgment in the CPLR article 78 proceeding. However, as the appellate brief raises no arguments challenging Supreme Court's determinations in the proceeding, any such arguments are deemed to be abandoned (*see generally Matter of Schulz v New York State Legislature*, 5 AD3d 885, 888 n 2 [2004], *appeal dismissed* 2 NY3d 793 [2004], *lv denied* 3 NY3d 606 [2004]).

The Nuisance Law provides that a public nuisance can exist "at a building, erection or place, or immediately adjacent to the building, erection or place as a result of the operation of the business" (Local Law No. 4 [2014] of Village of Groton § 152-3 [K]). As Supreme Court found, the phrase "as a result of the operation of the business" does not modify everything that precedes it, including the initial phrase "at a building, erection or place."[2] The Nuisance Law defines a "building" broadly, in a manner that suggests no intention to limit the law's application to a particular manner of use. The law further defines a "business office" as either a building or a portion thereof used for business activities; this definition would be rendered meaningless if the only type of "building" covered by the law were those used in the operation of a business (*see Matter of Rubeor v Town of Wright*, 134 AD3d 1211, 1212-1213 [2015], *lv denied* 27 NY3d 902 [2016]). Nothing else in the Nuisance Law suggests any intent to limit the law's coverage; on the contrary, the provision entitled "Findings" sets out a broad intent to regulate public nuisances due to interference with the public interest in a wide variety of manners relative to "public health, safety and welfare" (Local Law No. 4 [2014] of Village of Groton § 152-1). Applying the rule of the last antecedent to give effect to the law as a whole and to harmonize all of its provisions (*see Friedman v Connecticut Gen. Life Ins. Co.*, 9 NY3d 105, 115 [2007]; McKinney's Cons Laws of NY, Book 1, Statutes § 254), we agree with Supreme Court that the phrase "as a result of the operation of the business" was intended to modify only the phrase that immediately precedes it, and thus it neither limits the law's general application to businesses nor excludes residential properties from its reach. Accordingly, defendants' motion to dismiss the complaint for failure to state a claim was properly denied.

Next, defendants contend that the Nuisance Law improperly imposes vicarious liability upon property owners for tenant misconduct that the owners cannot control or foresee. This assertion is premature, as "a thing does not become a nuisance simply because it is declared to be such by . . . [a] municipality" (*Gunning Sys. v City of Buffalo*, 62 App Div 497, 499 [1901]). There has been no judicial determination as to whether defendants have violated the Nuisance Law; these issues remain to be adjudicated (*compare City of Newburgh v Park*

---

2. Although we need not reach it, defendants' further contention that their residential rental properties are not businesses is unavailing.

*Filling Sta., Inc.*, 273 App Div 24, 26 [1947], *affd* 298 NY 649 [1948]; *Gunning Sys. v City of Buffalo*, 62 App Div at 499-500; *City of Buffalo v Kellner*, 90 Misc 407, 417 [Sup Ct, Erie County 1915]).

■ Next addressing preemption, municipalities lack authority to adopt local laws that are inconsistent with the NY Constitution or any general law (*see DJL Rest. Corp. v City of New York*, 96 NY2d 91, 94 [2001]). A local law is preempted when it conflicts with the provisions of a state statute or "impose[s] prerequisite additional restrictions on rights under [s]tate law, so as to inhibit the operation of the [s]tate's general laws" (*Eric M. Berman, P.C. v City of New York*, 25 NY3d 684, 690 [2015] [internal quotation marks and citation omitted]). The Nuisance Law requires the owner of a property that has been identified as a public nuisance to meet with counsel for the Village within 10 days after receiving written notice and to provide counsel with a written plan to abate the nuisance within 30 days; if a tenant's eviction is part of the abatement plan, the eviction proceeding must be commenced within 10 days after the meeting (*see* Local Law No. 4 [2014] of Village of Groton § 152-6 [C] [6]). Defendants contend that, as their tenants have month-to-month leases, these time limits conflict with Real Property Law § 232-b, which requires a property owner to provide a month-to-month tenant with at least one month's notice before the expiration of the term of the tenancy, and that the law is therefore preempted in part (*see e.g. Sills v Dellavalle*, 9 AD3d 561, 561-562 [2004]).

Initially, we reject the Board's argument in opposition insofar as it is based upon RPAPL article 7, as summary proceedings may be used to evict a tenant only in limited circumstances (*see* RPAPL 711). The Nuisance Law encompasses violations that do not fall within the purview of those statutory grounds (*see* Local Law No. 4 [2014] of Village of Groton § 152-3 [K]). Nonetheless, as the Board argues, eviction is not the sole remedy available to defendants; the Nuisance Law contains no requirement that owners must abate nuisances by terminating tenancies, but allows for other means of addressing the issues, and these have not been explored at this point in the proceedings. Accordingly, we do not find the law's abatement provisions to be preempted.

The amici curiae argue that the Nuisance Law is preempted by several state laws that protect the rights of domestic violence victims, but they lack status to raise this claim, as it

is a new issue that was never raised by defendants (*see* 22 NYCRR 500.23 [a] [4]; *Matter of Lezette v Board of Educ., Hudson City School Dist.*, 35 NY2d 272, 282 [1974]; *Reform Educ. Fin. Inequities Today [R.E.F.I.T.] v Cuomo*, 199 AD2d 488, 490 [1993], *mod* 86 NY2d 279 [1995]). Defendants asserted in Supreme Court that the Nuisance Law conflicts with *federal* law pertaining to domestic violence victims; however, this claim was neither raised in defendants' appellate brief nor in that of the amici curiae, and is thus deemed to be abandoned (*see generally Matter of Schulz v New York State Legislature*, 5 AD3d at 888 n 2). Nevertheless, the general issue of the negative impact of the law upon domestic violence victims was raised as part of defendants' constitutional overbreadth claims, and is addressed below.

█ In light of the findings above, and as these issues did not fully resolve the matter, we now address the constitutionality of the Nuisance Law (*see Matter of Syquia v Board of Educ. of Harpursville Cent. School Dist.*, 80 NY2d 531, 535 [1992]; *People v Bowe*, 61 AD3d 1185, 1186 [2009], *lv denied* 12 NY3d 923 [2009]). The various challenges raised include a claim that the law is unconstitutionally overbroad in that it deters tenants from seeking assistance from police by placing them at risk of losing their homes. "The test for determining overbreadth is whether the law on its face prohibits a real and substantial amount of constitutionally protected conduct" (*People v Barton*, 8 NY3d 70, 75 [2006]; *see Houston v Hill*, 482 US 451, 458-459 [1987]; *United States v Awan*, 459 F Supp 2d 167, 180 [ED NY 2006], *affd* 384 Fed Appx 9 [2d Cir 2010], *cert denied* 562 US 1170 [2011]). A law will not be found to be unconstitutionally overbroad "merely because it is possible to conceive of a single impermissible application" (*Members of City Council of Los Angeles v Taxpayers for Vincent*, 466 US 789, 800 n 19 [1984] [internal quotation marks and citation omitted]; *see People v Barton*, 8 NY3d at 75-76). Instead, in considering such a claim, a court must "assess the wording of the statute—without reference to the defendant's conduct—to decide whether a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep" (*People v Marquan M.*, 24 NY3d 1, 8 [2014] [internal quotation marks and citations omitted]; *see Virginia v Hicks*, 539 US 113, 119-120 [2003]). In this analysis, "clear and unequivocal statutory language is presumptively entitled to authoritative effect" (*People v Suber*, 19 NY3d 247, 252 [2012]; *accord People v Marquan M.*, 24 NY3d at 9).

Initially, the Board does not dispute that constitutionally protected conduct is implicated in the claim that the Nuisance Law deters tenants from seeking police assistance. Indeed, the right to petition the government for redress of grievances is "one of the most precious of the liberties safeguarded by the Bill of Rights" (*BE&K Constr. Co. v NLRB*, 536 US 516, 524 [2002] [internal quotation marks and citation omitted]; *accord City of New York v Beretta U.S.A. Corp.*, 524 F3d 384, 397 [2d Cir 2008], *cert denied* 556 US 1104 [2009]). This protection includes the right to make criminal complaints to the police (*see Jackson v New York State*, 381 F Supp 2d 80, 89 [ND NY 2005]; *Estate of Morris ex rel. Morris v Dapolito*, 297 F Supp 2d 680, 692 [SD NY 2004]). As the right to petition protects "a particular freedom of expression," it is analyzed according to the same constitutional principles that apply to the right of free speech (*McDonald v Smith*, 472 US 479, 482 [1985]; *see Lehmuller v Incorporated Vil. of Sag Harbor*, 944 F Supp 1087, 1095 [ED NY 1996]). Thus, we turn to the question whether the Nuisance Law burdens a real and substantial amount of such constitutionally protected expression.

The first step in this analysis is to examine the text of the Nuisance Law, as "it is impossible to determine whether a statute reaches too far without first knowing what the statute covers" (*United States v Williams*, 553 US 285, 293 [2008]; *accord People v Marquan M.*, 24 NY3d at 9). The points that accumulate toward a public nuisance determination under the Nuisance Law are assessed according to a comprehensive list of criminal and non-criminal events. These range from "[s]uffering or permitting the premises to become disorderly" (Local Law No. 4 [2014] of Village of Groton § 152-3 [K] [1] [b]) through various violations of, among others, the Code of the Village of Groton, the Alcoholic Beverage Control Law and the Penal Law. Violations need not involve criminal prosecution or conviction and are proved by a preponderance of the evidence. The evidence may consist of documentation of police reports and various other forms of police activity such as investigative reports and the execution of search warrants (Local Law No. 4 [2014] of Village of Groton §. 152-3 [M]). Nothing in the Nuisance Law precludes the assessment of points against a property for police involvement resulting from a tenant's exercise of the right to petition the government for redress by summoning police. Moreover, as the Nuisance Law assigns 12 points for a single occurrence of certain serious crimes, and

deems a property to be a public nuisance upon accumulating 12 points within six months, it permits a property to be declared a public nuisance as the result of a report to police of a single offense. Critically, there is no distinction between crimes committed by tenants and those committed against tenants; the Nuisance Law thus permits a determination that a property is a public nuisance solely because a tenant is a victim of a crime.

In addition to the point system, the Nuisance Law also establishes other methods by which a property may be shown to be a public nuisance. Most significantly, one of these provides that a preponderance of evidence showing "repeated criminal activity [that] has an adverse impact, as defined in [the Nuisance Law], on [a] property or neighborhood" constitutes prima facie evidence of a public nuisance (Local Law No. 4 [2014] of Village of Groton § 152-4 [C] [3]). An "adverse impact" is defined to specifically include—together with arrests and other such events—"complaints made to law enforcement officials of illegal activity associated with the property" (Local Law No. 4 [2014] of Village of Groton § 152-3 [A]). The Nuisance Law's "clear and unequivocal" text (*People v Suber*, 19 NY3d at 252) thus unambiguously establishes that a property may be deemed to be a public nuisance as the direct result of complaints to police. As with the point system, there is no exception in this provision for complaints to police made by tenants in the exercise of their First Amendment rights to petition the government.

The Nuisance Law's provisions pertaining to remedies demonstrate that the loss of a tenant's home may result directly from the designation of a property as a public nuisance. As previously noted, the Nuisance Law expressly permits owners to include the eviction of tenants in the required plans to abate public nuisances—again, with no exception for tenants who may have caused points to be assessed against a property by summoning police because they were victimized by criminal activity, or who otherwise exercised their constitutionally-protected right to request police assistance. Further, as the relief permitted by article II of the Nuisance Law includes the property's temporary closure, all tenants and occupants of a property where illegal activity occurs—not just those who actually commit a violation—are at risk of losing their homes upon a declaration that the property is a public nuisance. The plain language of the law therefore tends to discourage tenants from

seeking help from police. As the amici curiae assert, this discouragement may have a particularly severe impact upon victims of domestic violence (*see generally* Cari Fais, Note, *Denying Access to Justice: The Cost of Applying Chronic Nuisance Laws to Domestic Violence*, 108 Colum L Rev 1181 [2008]). If a tenant who has an order of protection against an individual because of prior domestic violence calls police for assistance in enforcing the order, points may be assessed against the property. Further, if a tenant summons police because he or she has been the victim of a crime of domestic violence involving assault or one of the other offenses worth 12 points, the Nuisance Law automatically deems the property to be a public nuisance, placing the tenant at risk of losing his or her home solely because of this victimization.

While this Court's overbreadth analysis must be premised solely upon the text of the law, we nevertheless note that the record establishes that the Nuisance Law has in fact been applied to result in the assessment of points against properties because tenants called for police assistance, even in situations where the tenants were victims rather than perpetrators. In one example, a tenant called police from another location to report that she was afraid to return home because an intoxicated person in her apartment had pushed her and had a stick that she feared he would use against her. The police protected the tenant's safety by transporting her to a relative's home; four points were then assessed against the property where she resided. Four points were likewise assessed when police were summoned to a domestic disturbance between tenants, learned that an order of protection was in place, and arrested one of the tenants. Points were assessed when a tenant called police to report that his apartment had been broken into and items had been stolen, and also when a tenant called police to report that several persons outside her apartment had shouted threats and tried to gain entrance by "slamming" against the door. The record further reveals that points have been assessed when tenants requested police assistance in noncriminal circumstances, as when tenants asked police to mediate in verbal disagreements over such matters as religion or the use of shared property. Pirro stated that he had terminated several tenancies as a result of such incidents in an effort to comply with the Nuisance Law's abatement requirements, and the record reveals that the points assessed for such incidents contributed to the total point assessments that led to the commencement of this action.

It is thus apparent that the Nuisance Law has a chilling effect upon tenants' exercise of their First Amendment right to petition the government, in that it penalizes them for doing so by using their constitutionally protected activity as a basis for identifying their homes as public nuisances. Further, and as previously discussed, the scope of the Nuisance Law is not limited to business properties or even to rental properties, but extends to every "building, erection or place" in the Village (Local Law No. 4 [2014] of Village of Groton § 152-3 [K]). As such, its deterrent effect upon the exercise of the right to petition for redress of grievances potentially extends to every Village property owner, any of whom could lose their homes or businesses under the plain text of the Nuisance Law if they call law enforcement to request assistance or report a crime. We further note that nothing in the Nuisance Law reveals whether Village officials assess points against all properties in the Village for every incident involving police assistance, or, if not, what criteria are used in selecting the properties that will be subject to point assessments (*see Houston v Hill*, 482 US at 466-467).

We are not unsympathetic to the Board's arguments that the Nuisance Law was intended to protect residents from crime rather than to punish them for reporting it, and that it serves the "laudable public purpose" of addressing serious community problems of noise, crime and general disorder that have arisen in the Village as a result of the presence of properties like those at issue here (*People v Marquan M.*, 24 NY3d at 11). Police reports, complaints from neighbors and other evidence in the record reveal frequent disturbances associated with defendants' properties and support the determination that such activity "is detrimental to the health, safety and welfare of" residents, visitors and businesses in the Village (Local Law No. 4 [2014] of Village of Groton § 152-1). Nevertheless, the burdens imposed by the Nuisance Law upon First Amendment freedom of expression, although apparently content neutral, are not "narrowly tailored to serve [this] significant governmental interest," nor does the Nuisance Law appear to "permit alternative channels for expression" by providing a means by which residents can exercise their right to request assistance from police without risking determinations that their homes are public nuisances (*Deegan v City of Ithaca*, 444 F3d 135, 142 [2d Cir 2006]; *see People v Barton*, 8 NY3d at 76).

Thus, we find that the Nuisance Law "facially 'prohibits a real and substantial amount of' expression guarded by the

First Amendment" (*People v Marquan M.*, 24 NY3d at 8, quoting *People v Barton*, 8 NY3d at 75). Such a showing "suffices to invalidate all enforcement of [the Nuisance Law], until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression" (*Virginia v Hicks*, 539 US at 118-119 [internal quotation marks and citations omitted]). There is no severability clause in the Nuisance Law, and, in any event, the unconstitutional aspects of the law are so interwoven into its provisions that severance would be impractical (*see People v Marquan M.*, 24 NY3d at 11; *Anonymous v City of Rochester*, 13 NY3d 35, 53-54 [2009]). We are thus constrained to hold that, as drafted, Local Law No. 4 (2014) of the Village of Groton is overbroad and facially invalid under the First Amendment. Accordingly, defendants' motion for summary judgment dismissing the complaint and for judgment in their favor on the counterclaim should have been granted. The parties' remaining arguments and defendants' counterclaim are rendered academic by this determination.

PETERS, P.J., LYNCH, CLARK and AARONS, JJ., concur.

Ordered that the order and judgment is modified, on the law, without costs, by reversing so much thereof as denied defendants' motion for summary judgment dismissing the complaint; said motion granted, summary judgment awarded to defendants, complaint dismissed and it is declared that Local Law No. 4 (2014) of the Village of Groton is overbroad and facially invalid under the First Amendment; and, as so modified, affirmed.