# State of New York Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 83
Town of Delaware,
       Respondent,
     v.
Ian Leifer, &c.,
       Appellant.

Russell A. Schindler, for appellant.
Kenneth C. Klein, for respondent.

DiFIORE, Chief Judge:

In this appeal, a landowner challenges the constitutionality of zoning laws that preclude him from holding a three-day music and camping festival on his rural property in the Town of Delaware. Because the challenged provisions do not unconstitutionally

restrict the property owner's First Amendment rights and are not void for vagueness, we affirm the Appellate Division order affirming a Supreme Court judgment enjoining the event.

Defendant Ian Leifer owns a 68-acre property containing a single-family home and undeveloped land within the boundaries of plaintiff Town of Delaware. In 2016, he planned to sponsor on the property a three-day event named "The Camping Trip" – which he had hosted twice before in previous years – over the course of an August weekend. The event was advertised online as a celebration of Shabbat, the Jewish Sabbath, during which attendees would camp on the property and view live outdoor music performances before and after Shabbat, which extends from sundown Friday to sundown Saturday. Attendees could either bring their own camping gear or purchase a "Tent-Building Pass," permitting them to use a tent assembled by the event organizer. Meals would be provided at the site through food truck vendors and a religious nonprofit organization would lead in Jewish religious ceremonies. Indicative of the scale of the 2016 event, preparations included off-site parking at a local school and rental of shuttle buses to transport attendees to the event site, a party tent for inclement weather, security at both the parking lot and event, $2,000,000 event insurance, 16 portable toilets, a 30-cubic-yard dumpster, EMTs on site and an ambulance on standby.

Before the 2016 Camping Trip was scheduled to occur, the Town commenced this action in Supreme Court seeking a temporary restraining order, preliminary injunction and permanent injunction against the event, alleging it was prohibited by the Town's Zoning

Law (adopted as Local Law No. 2 of 1996 and codified as Chapter 220 of the Code of the Town of Delaware). The Town asserted that the Camping Trip is a land use not permitted in the Rural District where defendant's property is located, noting that a "theater" – a land use encompassing the musical performances component of the event – is permitted elsewhere in the Town, but not in a Rural District. The complaint further alleged that the Zoning Law permits those wishing to use property in a manner not specifically authorized to apply for a zoning variance or amendment but that defendant had not done so for the Camping Trip. Defendant opposed the Town's requested relief arguing, in part, that he had a right to hold the event on his property under the First Amendment.[1]

Days before the event was scheduled to begin, the parties resolved the Town's request for a preliminary injunction by stipulating that the 2016 Camping Trip could go forward on certain conditions, including that it would not exceed 400 guests, that defendant would provide the Town confirmation that he consulted with the health and fire departments prior to the event, and that the Town would be named as an additional insured on the event insurance policy. The Town reserved the right to pursue its claim that the Zoning Law lawfully prohibits the event in the Rural District. The 2016 Camping Trip ultimately involved music performances by 15 acts.

When defendant advertised his intent to hold the event again in 2017, the Town moved for summary judgment on its claim for a permanent injunction. The Town argued

---

[1] Defendant also contended that the Town's requested relief would violate the federal Religious Land Use and Institutionalized Persons Act of 2000 (42 USC § 2000cc et seq.), an argument he later abandoned in Supreme Court.

that uses not specifically authorized for a particular district under the Zoning Law are prohibited and, here, the Camping Trip was not a legal land use because the proposed activities did not constitute "a specified Principal Permitted Use, Special Use or Accessory Use" within a Rural District. Defending against the First Amendment claim, the Town asserted that the relevant Zoning Law provisions are content-neutral and satisfy the "intermediate scrutiny" test applied to such regulations, explaining that the Camping Trip would have secondary effects on the surrounding "rural and residential community" antithetical to the Zoning Law's stated purpose of preserving the agricultural character of the Rural District.

Defendant opposed the Town's motion and cross-moved for summary judgment dismissing the complaint, seeking a declaration that the Zoning Law's definition of a "theater" was unconstitutional on multiple grounds, including that it is unconstitutionally vague under the Due Process Clause. With respect to the First Amendment, he contended that the restriction on theaters in the Rural District is unconstitutional, both as applied and on a facial overbreadth theory, because it bans personal displays of music, drama and film such as singing in one's home.

Rejecting defendant's constitutional arguments, Supreme Court granted the Town's motion, denied the cross motion and permanently enjoined defendant from advertising, selling tickets to, or holding the Camping Trip on his property, clarifying that the injunction would not prohibit him from using his property in ways consistent with the dwelling located there. The Appellate Division affirmed, reasoning that the relevant Zoning Law

provisions are content-neutral "time, place and manner" restrictions that are compatible with the First Amendment (162 AD3d 1350, 1351 [3d Dept 2018]). The court explained that the relevant provisions are narrowly tailored to effectuate the Town's substantial interest in "preserving the character of the area" because, while use of property as a "theater" is prohibited, they expressly allow accessory uses in the Rural District that permit residents to "worship, watch films, play music, have family and friends visit and engage in other private behavior customarily conducted by homeowners," which activity is not encompassed by the excluded "theater" land use (id. at 1351-1352). Citing the fact that the Zoning Law expressly permits theaters in other, more developed parts of the Town, the court concluded that the provisions leave open ample alternative means for communication (id.). The Appellate Division also rejected defendant's First Amendment overbreadth claim, reasoning that the relevant provisions do not "'facially prohibit[] a real and substantial amount of expression guarded by the First Amendment' so as to have a chilling effect," and the vagueness claims, concluding that the provisions invite neither arbitrary enforcement nor misunderstanding by those of ordinary intelligence (id. at 1352-1353, quoting People v Marquan M., 24 NY3d 1, 8 [2014] [internal quotation marks and citation omitted]). Defendant appealed to this Court as of right pursuant to CPLR 5601(b)(1).

We have "recogni[zed] the broad power of municipalities to implement land use controls to meet the increasing encroachments of urbanization on the quality of life" (Matter of Town of Islip v Caviglia, 73 NY2d 544, 550 [1989]). Zoning ordinances constitute an exercise of the government's police power to promote public health, safety

and welfare and, as legislative enactments, are entitled to a strong presumption of constitutionality (see id. at 550-551; see also Stringfellow's of N.Y. v City of New York, 91 NY2d 382, 395-396 [1998]).  Thus, a party challenging a zoning ordinance generally carries a burden to prove its unconstitutionality beyond a reasonable doubt (McMinn v Town of Oyster Bay, 66 NY2d 544, 548 [1985]; see Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 500 [1983]).

The Town of Delaware Zoning Law's general purpose is to "provide for the orderly and desirable development and use of land" in accordance with Town authority and to "promote the general welfare," including by "promoting agriculture," "[m]aintaining, to the maximum degree possible while accepting growth, the rural scenic character of the Town," and "[p]reventing and eliminating other hazards and nuisances" (Zoning Law § 220-3).  Under the Zoning Law, the Town is divided into seven distinct districts, each with a stated purpose, as well as two types of special "overlay" districts imposing additional regulations not relevant here.  Land uses that are permitted in each district are specifically listed.  In addition to the "principal" permitted uses identified for a given district, the Zoning Law also authorizes specific "accessory" uses, defined as those "incidental and subordinate" to the principal use of a piece of land or a building "located on the same lot" (Zoning Law § 220-5, "accessory use or structure").  Each zoning district contains a list of "special uses" that, subject to approval by the Town Planning Board, may be "permitted in a particular zoning district only on showing that such use in a specified location will comply with all conditions and standards for the location or operation of such use as may

be reasonably imposed according to the requirements of [the Zoning Law]" (id. § 220-5, "special use"). The Zoning Law deems prohibited any proposed use that "is not specifically permitted"; however, it also permits a landowner seeking to engage in a prohibited use to submit a request for a zoning law amendment or variance (id. at § 220-11).

The Town's intent in adopting the Rural District classification was "to identify land environments conducive to the mutual existence of agricultural and low-density residential uses as well as certain unobtrusive commercial activities, ensuring both adequate amounts and choices of areas suitable for these respective uses" (Zoning Law § 220, Schedule of District Regulations, Attachment 1:4). To that end, principal permitted uses in Rural District areas include agriculture, agriculture service establishments, bed-and-breakfast establishments, fish hatcheries, greenhouses, group homes, two-family dwellings and single-family detached dwellings (like defendant's home, located on the subject property) (id.). Among the accessory uses specifically permitted are "customary accessory uses." That term is not defined in the Zoning Law but, by applying the modifier "customary" to the definition of "accessory use," the phrase is reasonably interpreted to mean uses customarily "incidental and subordinate" to a principal use and located on the same lot. With respect to defendant's land, which is improved by a residence, such permitted customary accessory uses would include those incidental and subordinate uses commonly

associated with land containing a single-family dwelling.[2]  A range of additional land uses may be permitted as special uses in a Rural District upon application to and approval by the Town Planning Board, including campgrounds, country clubs, hotels, office buildings and recreational facilities.[3]

None of the principal or accessory uses specifically permitted in the Rural District encompass defendant's three-day outdoor music and camping festival.  Such an event cannot reasonably be characterized as a customary accessory use associated with defendant's single-family residence.  To the degree any portion of the event – or the entire event as planned – could be conducted as a special use or under a variance with permission

---

[2] The Rural District also specifically permits as an accessory use "home occupations," defined as "[a]ny use customarily conducted entirely within a dwelling and carried on by the inhabitants residing therein, providing that the use is clearly incidental and secondary to the use of the dwelling for dwelling purposes; the exterior appearance of the structure or premises is constructed and maintained as a residential dwelling; and no goods are publicly displayed on the premises" (Zoning Law § 220-5, "home occupation"; see also id. § 220-24[A][10] [providing examples of home occupations that can qualify as accessory uses, including professional offices and artist or musician studios]).

[3] In determining whether to permit a proposed special use – such as the use of property in a Rural District as a campground – the Planning Board is required to assess whether the "proposed use shall be in harmony with purposes, goals, objectives and standards of the Town of Delaware Master Plan and [the Zoning Law]" and to consider a number of factors, including its potential adverse effects on "adjacent property, the character of the neighborhood, traffic conditions, parking, public improvements, public sites or rights-of-way, or other matters affecting the public health, safety and general welfare" (Zoning Law § 220-47).  The Town may impose conditions to mitigate negative impacts, taking into account considerations such as the adequacy of water supply and sewage disposal facilities, fire lanes and the provision of fire protection facilities, "[t]he potential for the creation of nuisances, such as . . . noise, vibration, odor and glare," and the effect of the proposed special use on "the value and future development of neighboring properties" (id. § 220-47[E]).

from the Planning Board, defendant never made any such request.  Thus, unless the provisions are unconstitutional, his proposed use is clearly prohibited in the Rural District under the Town of Delaware Zoning Law and the Town was entitled to enjoin the event (see Zoning Law § 220-11).

In evaluating the constitutionality of the relevant Town of Delaware Zoning Law provisions, we review the Zoning Law's entire scheme for the Rural District.  Defendant's constitutional challenges, however, largely focus on a single land use defined in the Zoning Law that is prohibited in the Rural District but permitted in other zoning districts: the "theater" land use.  This approach misses the mark because the Town did not rely exclusively on the theater provision but cited the Zoning Law as a whole to show that certain uses are prohibited in a Rural District but expressive aspects of the event, such as the musical presentations, are permitted in other districts.  Considering this context, neither the theater provision, nor the Zoning Law as a whole, violates defendant's constitutional rights.

The Zoning Law defines a "theater" as a "building or room or outdoor facility for the presentation of plays, films, other dramatic performances, or music" (Zoning Law § 220-5, "theater").  The phrase "outdoor facility" is not defined, but it necessarily refers to something distinct from a "building" or "room," which are also referenced in the provision. A "facility" is "something that makes an . . . operation . . . easier" or "something . . . that is built, installed, or established to serve a particular purpose" (Merriam-Webster Online Dictionary, facility [https://www.merriam-webster.com/dictionary/facility]).  The verb

"present" includes "to bring (something, such as a play) before the public" and "to offer to view" or "show" (Merriam-Webster Online Dictionary, present [https://www.merriam-webster.com/dictionary/present]).  A "theater" therefore encompasses the bringing of cultural performances before the "public," as well as a "showing" of these artforms more generally, in structures (i.e., a building or room) or outdoors in circumstances that involve supportive equipment or installations.  Here, to the extent defendant sought to show live music performances before festival attendees in an outdoor setting with a range of supporting equipment and other installations, those performances qualify as music "presentations" in outdoor "facilities" and, thus, as a "theater" under the Zoning Law.  Because aspects of his proposed land use fall within this category excluded in his Rural District, defendant challenges what he dubs "the theater prohibition" as violating the First Amendment as applied to him, as facially overbroad, and as unconstitutionally vague under the Due Process Clause.

In essence, defendant's First Amendment argument is that, because there are expressive aspects to his event, its restriction in a Rural District is unconstitutional and he has an unfettered right to hold a three-day music festival on his property free of regulation by the Town.  He is mistaken.  "[T]he First Amendment does not guarantee the right to employ every conceivable method of communication at all times and in all places" (Members of City Council of Los Angeles v Taxpayers for Vincent, 466 US 789, 812 [1984]).

The First Amendment's protections encompass entertainment, including film and live musical and dramatic performances, and are implicated here to the extent that the Zoning Law restricts non-accessory use of land for a "theater," thereby precluding defendant from hosting a music festival on his property (see e.g. Ward v Rock Against Racism, 491 US 781, 790 [1989], reh denied 492 US 937 [music performances]; Schacht v United States, 398 US 58 [1970] [theater]; Joseph Burstyn, Inc. v Wilson, 343 US 495 [1952] [film]).  That the Zoning Law restricts certain modes of expression, however, does not necessarily render it unconstitutional.  Because "various methods of speech, regardless of their content, may frustrate legitimate governmental goals" (Consolidated Edison Co. of N.Y. v Public Serv. Comm'n of N.Y., 447 US 530, 536 [1980]), the government may regulate expression through reasonable "time, place, or manner" restrictions (Clark v Community for Creative Non-Violence, 468 US 288, 293 [1984]).

Generally, "the First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others" (Taxpayers for Vincent, 466 US at 804).  Indeed, when the government regulates the content of speech, "the usual presumption of constitutionality afforded [legislative] enactments is reversed," the regulation is presumptively invalid and, under a "strict scrutiny" test, it is enforceable only if it is the least restrictive means for serving a compelling government interest (see United States v Playboy Entertainment Group, Inc., 529 US 803, 817, 813 [2000]).  A content-neutral time, place or manner restriction, however, is enforceable if it satisfies a more lenient, intermediate scrutiny standard:  it must be "narrowly tailored to serve a significant

government interest[] and leave open ample alternative channels of communication"
(People v Barton, 8 NY3d 70, 76 [2006]; see also Clark, 468 US at 293).

Alternatively, defendant argues that even if the Camping Trip may be lawfully
prohibited in the Rural District, the theater restriction must be struck down on facial
overbreadth grounds.  The overbreadth doctrine – which has been characterized as "strong
medicine" to be used "sparingly" – permits invalidation of a statute on First Amendment
grounds "because of a judicial prediction . . . that the statute's very existence may cause
others not before the court to refrain from constitutionally protected speech or expression"
(Broadrick v Oklahoma, 413 US 601, 613, 612 [1973]).  A statute is not facially overbroad
merely because we can "conceive of some impermissible applications" (Taxpayers for
Vincent, 466 US at 800; see Marquan M., 24 NY3d at 8).  Rather, particularly where the
statute regulates expressive conduct and not only pure speech, it will not be invalidated on
this theory unless it is substantially overbroad (id. at 799-800, quoting Broadrick, 413 US
at 615) "because it facially 'prohibits a real and substantial amount of' expression guarded
by the First Amendment" (Marquan M., 24 NY3d at 8, quoting Barton, 8 NY3d at 75).
That is, courts must "assess the wording of the statute – without reference to the defendant's
conduct – to decide whether a substantial number of its applications are unconstitutional,
judged in relation to the statute's plainly legitimate sweep" (id. [internal quotation marks
and citations omitted]).

In this case, to the extent the relevant Town of Delaware Zoning Law provisions restrict expression, they are time, place and manner regulations that are content-neutral[4] and thus subject to intermediate scrutiny under the First Amendment. They do not ban protected forms of expression entirely – such as by precluding all theaters from the Town – but rather restrict the location within the Town where that type of expression may occur. Case law addressing the constitutionality of zoning ordinances has consistently held that municipalities have a weighty interest in regulating the character and aesthetics of neighborhoods in order to preserve quality of life (see e.g. People v On Sight Mobile Opticians, 24 NY3d 1107, 1110 [2014], citing Taxpayers for Vincent, 466 US at 806; Caviglia, 73 NY2d at 550, 553; Renton v Playtime Theatres, Inc., 475 US 41, 50 [1986], reh denied 475 US 1132). Here as well, the Town's plainly stated motivation for the Zoning Law provisions governing land use in the Rural District – to preserve a balance of agricultural and low-impact non-agricultural land uses – qualifies as a significant government interest.

Thus, defendant's as-applied challenge distills to whether the time, place and manner regulations contained in the relevant Zoning Law provisions are sufficiently

---

[4] Content-neutrality turns on the form of the statute, its impact or the government purpose served by its enactment: a regulation is content-neutral if it is "justified without reference to the content of the regulated speech" or, put another way, if it "serves purposes unrelated to the content of expression . . . even if it has an incidental effect on some speakers or messages but not others" (Barton, 8 NY3d at 77, quoting Ward, 491 US at 791). The Town of Delaware Zoning Law provisions implicated here do not reference the content of any expression incidentally impacted, including the content displayed at theaters restricted in the Rural District.

narrowly tailored, leaving open adequate alternative modes and channels for communication. A time, place or manner regulation is narrowly tailored if it "promotes a substantial government interest that would be achieved less effectively absent the regulation" and is not "substantially broader than necessary to achieve [that] interest" (Ward, 491 US at 799-800 [internal quotation marks and citation omitted]). To be constitutional, the regulations need not be the least restrictive means of advancing the government goal, as the enforceability of such enactments "does not turn on a judge's agreement with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests" (id. at 800, quoting United States v Albertini, 472 US 675, 689 [1985]). The Zoning Law provisions at issue here satisfy this requirement. By automatically allowing a limited and balanced suite of principal and accessory land uses that are closely related to the government's purpose of preserving agricultural character (e.g., agriculture, agriculture services establishments, single- and two-family dwellings), but prohibiting a range of more obtrusive uses absent a special use permit or variance (including "theater[s]" with attendant noise and traffic), the provisions directly promote that government purpose, which would be less effectively achieved in their absence. Indeed, it was not unreasonable for the Town to conclude that an event like the Camping Trip is the sort of land use that, like a theater, would threaten the Rural District's agricultural character.

The challenged provisions are not substantially broader than necessary to further the government goal. They do not affect personal displays of music, drama or film consistent

with residential use, including singing at home or watching a film in one's living room. The accessory use provisions permitting home occupations and uses customarily accessory to principal uses like dwellings encompass additional protected music, drama and film-related expression that one may conduct on a residential property. Simply put, the Zoning Law does not restrict the type of musical expression or entertainment typically associated with residential use of property, such as that attendant to a backyard barbeque, birthday party or similar gathering of family and friends (including observance of Shabbat). The only music, drama and film presentations excluded without a variance are those that do not qualify under one of these expressly permitted land uses, including those in the defined category of "theater[s]" requiring the use of a structure or other outdoor supportive facilities. To the degree there exists a subcategory of excluded theaters that would not undermine the government's goal of preserving agricultural character – for example, presentations too large to qualify as a customary accessory use to a dwelling but nevertheless relatively quiet, small-scale and involving minimal traffic – that demonstrates at most that the relevant provisions may not be the narrowest means of advancing the Town's aims, which would not invalidate them.

There also exist ample alternative modes and channels for communication. Even focusing only on the theater provision, the Zoning Law expressly permits theaters in two of the seven non-overlay districts (see generally Renton, 475 US at 53-54 [concluding that over five percent of city land available for a relevant use was adequate to meet this requirement]). Notably, the constitutional validity of an ordinance does not depend on

whether the specific party challenging the regulation is actually able to access land for the desired purpose. Moreover, as noted, the Zoning Law does not prohibit expression consistent with permitted land uses, which include a range of special uses – for example, a "campground" – that can be proposed to the Planning Board. In addition, the Zoning Law allows for a person to seek an amendment or variance to the restrictions for their district (Zoning Law § 220-11), which defendant failed to do. Thus, the zoning provisions that precluded defendant's Camping Trip festival satisfy the intermediate scrutiny test for content-neutral time, place and manner restrictions. Inasmuch as the provisions simply seek to limit certain cultural presentations to the non-rural areas where they would have a less damaging impact, they also survive defendant's overbreadth challenge.[5]

---

[5] Defendant's reliance on Schad v Mount Ephraim (452 US 61 [1981]), in which the Supreme Court invalidated a zoning ordinance under the First Amendment, is misplaced. The zoning ordinance on which the municipality relied in that case to fine an adult bookstore that offered live nude dancing banned all "live entertainment" in the municipality, rather than restricting it to certain districts. Moreover, Schad represents an early step in the Supreme Court's development of First Amendment jurisprudence specific to regulation of adult businesses. That case law subsequently culminated in the development of a specialized burden-shifting framework for determining whether an ordinance regulating adult businesses – which may be treated as content-neutral if found to have been predominantly aimed at ameliorating negative secondary effects rather than restricting speech based on content – is actually "designed to serve [that] substantial government interest" (Los Angeles v Alameda Books, Inc., 535 US 425, 440-441 [2002] [plurality]). The concerns animating the analysis of adult use ordinances, which are not intuitively content-neutral (Alameda Books, 535 US at 448 [Kennedy, J., concurring]; For the People Theatres of N.Y., Inc. v City of New York, 29 NY3d 340, 349 n 1 [2017], cert denied sub nom. JGJ Merch. Corp. v City of New York, N.Y., 138 S Ct 1000 [2018], and cert denied sub nom. Ten's Cabaret, Inc. v City of New York, N.Y., 138 S Ct 994 [2018]), are not present here.

Defendant's facial and as-applied void for vagueness challenges likewise fail.  "A statute is unconstitutionally vague if it fails to provide a person of ordinary intelligence with a reasonable opportunity to know what is prohibited, and it is written in a manner that permits or encourages arbitrary or discriminatory enforcement" (People v Foley, 94 NY2d 668, 681 [2000], cert denied 531 US 875 [2000], citing Grayned v City of Rockford, 408 US 104, 108 [1972]; see People v Stuart, 100 NY2d 412, 421 [2003] [describing the difference between facial and as-applied vagueness claims]).  Statutory language that is imprecise but nevertheless provides sufficiently specific warning when "measured by common understanding" will survive constitutional scrutiny (Foley, 94 NY2d at 681, quoting People v Shack, 86 NY2d 529, 538 [1995]).

The plain text of the challenged Zoning Law provisions afforded sufficient notice that a music festival such as the Camping Trip was prohibited in the Rural District absent a permit, variance or amendment from the Planning Board and, thus, the provisions are not void for vagueness as applied to defendant.  The Zoning Law clearly lists the uses that are authorized in the Rural District without such permission and, measured by the standard of common understanding, was sufficient to alert landowners that those uses did not encompass a three-day outdoor music and camping festival.  While defendant focuses on the term "outdoor facility" in the theater definition, claiming this language did not alert him that his planned music performances on unimproved land were prohibited, this argument ignores the structure of the Zoning Law, which states that any use not specifically permitted is prohibited (Zoning Law § 220-11).  As we have explained, the legality of

defendant's event does not turn on whether it fits within the defined land use of a "theater." In any event, the definition – in addition to the stated purposes of the Rural District and the list of land uses allowed only with a special use permit – was adequate to alert a person of ordinary intelligence that the myriad preparations supporting the presentation of a three-day music festival, including security, tents, food trucks, and sanitation plans, would require either a variance or a special use permit to proceed. Defendant's facial vagueness challenge is primarily dependent on his assertion that the theater restriction criminalizes personal displays of music, film or other artistic expression by or for occupants or friends at one's home – a proposition that, as discussed, is negated by the plain text of the Zoning Law, which permits uses consistent with or customarily accessory to a dwelling. Defendant's constitutional challenges are therefore unavailing.

Finally, we reject defendant's contention that Supreme Court imposed an overly expansive injunction by enjoining the entire Camping Trip event when certain components of that festival fall outside the definition of a "theater." Defendant's argument again focuses too narrowly on the theater provision. The three-day event that, as advertised, would have included combined use of the property as an outdoor music performance venue and campground does not fall within any of the land uses expressly authorized in the Rural District without a permit, variance or amendment from the Town and, thus, Supreme Court did not err in enjoining it as a whole. Supreme Court expressly excluded from the injunction "uses consistent with the single family residence situate[d] on the Premises," mirroring the Zoning Law's allowance of that principal use of defendant's property and

any customary accessory uses. Moreover, if defendant desires to use his property to conduct activities qualifying as a special use in the Rural District, the injunction does not prevent him from applying to the Planning Board for such permission as authorized by the Zoning Law, and/or seeking a variance or amendment. We have considered defendant's remaining arguments to the extent preserved and they do not warrant a different outcome.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed, with costs. Opinion by Chief Judge DiFiore. Judges Rivera, Stein, Fahey, Garcia, Wilson and Feinman concur.

Decided November 21, 2019