People v Ellis (2018 NY Slip Op 03873)





People v Ellis


2018 NY Slip Op 03873


Decided on May 31, 2018


Appellate Division, Third Department


Pritzker, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 31, 2018

107932

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
ARTHUR W. ELLIS JR., Appellant.

Calendar Date: February 21, 2018

Before: McCarthy, J.P., Lynch, Devine, Clark and Pritzker, JJ.


Noreen McCarthy, Keene Valley, for appellant.
Kristy L. Sprague, District Attorney, Elizabethtown (James E. Martineau Jr. of counsel), for respondent.


Pritzker, J.

Appeal from a judgment of the County Court of Essex County (Meyer, J.), rendered September 9, 2015, convicting defendant upon his plea of guilty of the crime of failure to register or verify as a sex offender.
Defendant, a convicted sex offender, was charged by indictment with the crime of failure to register or verify as a sex offender under the Sex Offender Registration Act ([hereinafter SORA]; see Correction Law § 168-f [4]; see also Correction Law § 168-t). The charges stemmed from allegations
that he failed to register a Facebook account [FN1]. Thereafter, defendant moved to, among other things, dismiss the indictment arguing that he complied with the requirements of Correction Law §§ 168-f (4) and 168-a (18) by disclosing his email address and screen names and that he was not required to register his Facebook account. County Court denied the motion. Thereafter, defendant pleaded guilty as charged in the indictment and expressly reserved his right to appeal. He was sentenced, in accordance with the plea agreement, to time served and a three-year [*2]conditional discharge. Defendant now appeals.
Based upon our statutory interpretation, we find merit in defendant's contention that the indictment is jurisdictionally defective, a contention that is not foreclosed by his guilty plea (see People v Boula, 106 AD3d 1371, 1371-1372 [2013], lv denied 21 NY3d 1040 [2013]; People v Griswold, 95 AD3d 1454, 1454 [2012], lv denied 19 NY3d 997 [2012]). "'When presented with a question of statutory interpretation, our primary consideration is to ascertain and give effect to the intention of the Legislature'" (Ronkese v Tilcon N.Y., Inc., 153 AD3d 259, 262 [2017], quoting Yatauro v Mangano, 17 NY3d 420, 426 [2011]). When construing statutory language, we must do so in such a manner as "'to discern and give effect to the drafter's intention'" (Board of Trustees of the Vil. of Groton v Pirro, 152 AD3d 149, 153 [2017] [brackets omitted], quoting Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities, 19 NY3d 106, 120 [2012]). We must first look to the language of the statute, and, where that language is unambiguous, we must give effect to its plain meaning (see Pultz v Economakis, 10 NY3d 542, 547 [2008]; Matter of County of Ulster [ERED Enters., Inc.], 121 AD3d 111, 116 [2014], lv dismissed 24 NY3d 988 [2014]). However, where the statutory language is ambiguous, we may look to the statute's legislative history to decipher its meaning (see People v Ballman, 15 NY3d 68, 72 [2010]; Roberts v Tishman Speyer Props., L.P., 13 NY3d 270, 286 [2009]).
Pursuant to Correction Law § 168-f (4), a "sex offender shall register with the [Division of Criminal Justice Services] no later than [10] calendar days after any change of . . . [I]nternet accounts with [I]nternet access providers belonging to such offender [or] [I]nternet identifiers that such offender uses" (emphasis added). Under the statute, "'Internet access provider' means any business, organization or other entity engaged in the business of providing a computer and communications facility through which a customer may obtain access to the [I]nternet" (Correction Law § 168-a [17]). Inasmuch as Facebook does not provide its customers with Internet access, it is not an Internet access provider.
We must then determine whether it is an Internet identifier. Internet identifiers are defined as "electronic mail addresses and designations used for the purposes of chat, instant messaging, social networking or other similar [I]nternet communication" (Correction Law § 168-a [18]). Although a sex offender may establish a Facebook account by utilizing an electronic mail address, the account itself is not an electronic mail address. Therefore, we must determine whether a Facebook account constitutes a "designation used for the purposes of chat, instant messaging, social networking or other similar [I]nternet communication" (Correction Law § 168-a [18]).
Indisputably, the term "designation" has a plain and commonly understood meaning and is defined as "a distinguishing name, sign[] or title" (Merriam-Webster Online Dictionary, designation [http://merriam-webster.com/dictionary/designation]). However, when read in its entirety, a "designation used for the purposes of chat, instant messaging, social networking or other similar [I]nternet communication" is subject to varying interpretations, particularly given the ever-evolving nature of social media (Correction Law § 168-a [18]). On the one hand, this language could arguably require an offender to register each and every social media website or application that he or she uses. On the other hand, the statute could be more narrowly interpreted to only require registration of a designation, that being a distinguishing name or title.
Because the statutory language is subject to different interpretations, we must look outside the statute to determine its meaning. The Sex Offender Registry Annual Address [*3]Verification Form,[FN2] which is sent to sex offenders by the Division of Criminal Justice Services (see Correction Law §§ 168-a [5]; 168-b [4]; 168-f [2] [a]), has a section titled "Internet Information." Under this section, the sex offender must disclose any service providers, screen names and email addresses. The form does not require sex offenders to register which social networking websites or applications that they utilize or have accounts with, but instead requires the registration of any and all email addresses or screen names used in connection with social networking websites or applications. Here, defendant did what was required by the form by disclosing his email address and screen names.
Additionally, the legislative history behind the "Electronic Security and Targeting of Online Predator's Act" (hereinafter e-Stop) — the bill that codified the current language employed in Correction Law §§ 168-a (18) and 168-f (4) — reveals that its purpose was to protect the public, especially minors, from the dangers posed by sexual predators using social networking websites and other similar services (see L 2008, ch 67, § 1; 2008 McKinney's Session Laws of NY, at 587). The Legislature, in enacting e-Stop, recognized that while the law limits the ability of law enforcement to prevent a sex offender from using the Internet to contact a child (see e.g. Packingham v North Carolina, ___ US ___, ___, 137 S Ct 1730, 1733-1734 [2017]), social networking websites may themselves be able to preclude sex offenders from "accessing such websites' most vulnerable users." Prior to e-Stop, however, social networking websites could not access the Internet information contained in the sex offender registry (see L 2008, ch 67, § 1; 2008 McKinney's Session Laws of NY, at 588). E-Stop "enables New York to combat misuse of the [I]nternet by convicted sex offenders by requiring sex offenders to register their [I]nternet identifiers with law enforcement, permitting social networking websites to access the [I]nternet identifiers of convicted sexual predators in order to prescreen or remove them from services used by children and notify law enforcement of potential violations of law, and prohibiting certain high risk sex offenders from using the [I]nternet to victimize children" (L 2008, ch 67, § 1; 2008 McKinney's Session Laws of NY, at 588). Thus, the main purpose of e-Stop is to enable social networking sites, or authorized Internet entities, to access these Internet identifiers in order to better protect the users of their websites. Finally, we note that, under the statute, Facebook meets the definition of an authorized Internet entity, which is defined as "any business, organization or other entity providing or offering a service over the [I]nternet which permits persons under [18] years of age to access, meet, congregate or communicate with other users for the purpose of social networking" (Correction Law § 168-a [16]). The absence of any requirement in the statute that a sex offender disclose which authorized Internet entities he or she uses is telling.
Upon consideration of the foregoing, we conclude that the social media website or application — be it Facebook or any other social networking website or application — does not constitute a "designation used for the purposes of chat, instant messaging, social networking or other similar [I]nternet communication" (Correction Law § 168-a [18]). An Internet identifier is not the social networking website or application itself; rather, it is how someone identifies [*4]himself or herself when accessing a social networking account, whether it be with an electronic mail address or some other name or title, such as a screen name or user name. Defendant's failure to disclose his use of Facebook is not a crime, rendering the indictment jurisdictionally defective (see People v Boula, 106 AD3d at 1372; People v Slingerland, 101 AD3d 1265, 1266 [2012], lv denied 20 NY3d 1104 [2013]). Accordingly, we find that County Court improperly denied defendant's motion to dismiss the indictment. In light of our determination, defendant's remaining arguments are academic.
McCarthy, J.P., Lynch, Devine and Clark, JJ., concur.
ORDERED that the judgment is reversed, on the law, motion granted and indictment dismissed.



Footnotes

Footnote 1: The indictment reads that defendant failed to register his "Facebook [I]nternet identifier account" without any further explanation. It is clear, however, from the People's brief that defendant was prosecuted for failing to register his Facebook account.

Footnote 2: The instructions that the Division of Criminal Justice Services supplies with the form do not clearly or accurately state what information a sex offender is statutorily required to register. Significantly, the instructions do not parrot the statutory language and, in fact, they introduce language that is not found in the statute, such as "[I]nternet service providers" and "screen names." Moreover, the instructions do not include the term "[I]nternet identifiers" or its statutory definition.