■ EAGLES LANDING, LLC, Appellant, v NEW YORK CITY DE-
PARTMENT OF ENVIRONMENTAL PROTECTION et al., Respondents.
[906 NYS2d 364]—

Mercure, J.P. Appeal from a judgment of the Supreme Court
(Lalor, J.), entered August 27, 2008 in Greene County, which
converted an application brought pursuant to CPLR article 78
into an action for declaratory judgment and declared, among
other things, that there was reasonable cause to believe that
plaintiff was in violation of watershed regulations with respect
to real property it owned in the Town of Windham.

During the relevant time period, plaintiff owned 10 contigu-
ous, forested lots, each slightly over five acres in a larger
subdivision located in the Town of Windham, Greene County.[1]
This property is located within the watershed that contributes
surface waters to the drinking water supply for New York City.
In 2005, Joseph Damrath, the Stormwater Programs Acting
Supervisor for defendant New York City Department of
Environmental Protection (hereinafter NYCDEP), was con-
tacted by a resident of the subdivision in which plaintiff's prop-
erty is located. The resident informed Damrath that construc-
tion activity was taking place on plaintiff's property, requested
that NYCDEP inspect the activity, and gave Damrath directions
and an access code to open the subdivision's gate. Damrath
proceeded to a 650-foot road that interconnects some of
plaintiff's lots. Once there, he observed evidence of ongoing
construction taking place in plain view on the road, without
stormwater controls.

NYCDEP issued a notice of violation and, after meeting with
plaintiff's chief executive officer, a corrected notice of violation
based upon plaintiff's failure to obtain approval of a stormwater
pollution prevention plan (hereinafter SPPP) before initiating
construction. Plaintiff's subsequent applications for an SPPP
were rejected as incomplete because they failed to address

---

1. Plaintiff has since sold two lots to independent third parties.

development of the road and all 10 lots, including the placement of subsurface sewage treatment systems (hereinafter STSs). In the absence of soil testing performed on all of the lots, NYCDEP also rejected applications, in connection with a prospective sale, for approval of STSs for two of the lots. Moreover, a dispute evidently arose between the parties regarding NYCDEP's interpretation of its regulations as prohibiting both the siting of STSs on land with slopes in excess of 15% and the modification of a slope in excess of 15% down to an acceptable grade without a variance.

Following NYCDEP's rejection of plaintiff's challenges to both the notice of violation and the interpretation of the applicable regulations, a CPLR article 78 proceeding was commenced seeking, among other things, a declaration that NYCDEP has no jurisdiction over its property, that plaintiff is not required to obtain approval of an SPPP, and that NYCDEP must interpret its regulations on STSs as permitting modification of any existing slope on its lots to a gradient of 15% or less, without approval. Following joinder of issue, plaintiff filed an amended petition asserting additional claims under 42 USC § 1983. Supreme Court converted the proceeding into a declaratory judgment action and denied plaintiff's motion for a default judgment. The court determined that NYCDEP had jurisdiction over the property and authority to enforce its watershed regulations and declared "reasonable cause to believe [that plaintiff had] violated watershed regulations." The court also held that NYCDEP's interpretation of its regulations as prohibiting STSs on natural slopes of 15% was not unreasonable, declared that plaintiff must submit an SPPP and obtain approval prior to installation of an STS, and dismissed plaintiff's claims under 42 USC § 1983. Plaintiff appeals and we now affirm.

Initially, we reject plaintiff's argument that Supreme Court abused its discretion in denying plaintiff's motion for a default judgment based upon defendants' failure to submit a timely answer to the amended petition. Supreme Court has the discretionary authority to permit late service of an answer "upon a showing of a reasonable excuse for delay or default" (CPLR 3012 [d]; accord Watson v Pollacchi, 32 AD3d 565, 565-566 [2006]). Here, in connection with their cross motion to extend their time to answer the amended petition and compel acceptance of the answer to the amended petition, defendants demonstrated that the 10-day delay in serving plaintiff at its counsel's primary address in Florida arose due to law office failure. Under the circumstances herein, and absent any prejudice caused to plaintiff by the delay or indication that defendants

intended to abandon their defense against the proceeding, Supreme Court properly denied plaintiff's motion (*see Watson v Pollacchi*, 32 AD3d at 565-566; *Planck v SUNY Bd. of Trustees*, 18 AD3d 988, 991-992 [2005], *lv dismissed* 5 NY3d 844 [2005]; *see also Gazes v Bennett*, 70 AD3d 579, 579-580 [2010]; *Matter of Powers v De Groodt*, 43 AD3d 509, 511-512 [2007]).

Turning to the merits, we agree with Supreme Court that NYCDEP rationally interpreted its regulations as requiring a variance for the siting of septic systems on slopes with a natural grade exceeding 15%. NYCDEP is empowered by the Public Health Law to adopt—subject to approval by the New York State Department of Health (hereinafter DOH)—rules and regulations to protect its water supply, and to enforce those regulations (*see* Public Health Law § 1100 [1]; § 1102; *see also* 10 NYCRR 128-5.1; 15 RCNY 18-51; *Matter of Town of Hunter v City of New York*, 46 AD3d 1197, 1198 [2007]; *City of New York v Mancini-Ciolo, Inc.*, 188 AD2d 633, 634 [1992]). Pursuant to that authority, it adopted watershed regulations regarding siting of septic systems, which were approved by DOH, that require NYCDEP approval of "[t]he design, treatment, construction, maintenance and operation of new" STSs in the watershed (15 RCNY 18-38 [a] [1]). Those regulations also incorporate by reference the applicable state regulations, which provide, as relevant here, that sites with "[s]lopes greater than 15% are . . . unacceptable" for STSs (10 NYCRR Appendix A-75, § 75-A.4 [a] [1]; *see* 10 NYCRR 75.5; 15 RCNY 18-38 [a] [2]).

The regulations do not define the term "slope" or address whether existing slopes may be modified to a gradient of 15% or less. NYCDEP has interpreted the provision to allow on-site STSs only on existing slopes of 15% or less. Plaintiff challenges that interpretation as irrational because it is stricter than an interpretation of the same regulation contained in a 1996 DOH handbook. The handbook states that "[s]ites with at least one foot of unsaturated permeable soils and slopes not exceeding 20% may be modified by grading (i.e., cut and/or fill) to meet the maximum 15% slope requirement." (New York State Department of Health Individual Residential Wastewater Treatment Systems Design Handbook, at 30 [1996].)

Even assuming, however, that this statement reflects DOH's current interpretation of the state regulation, NYCDEP is the agency that promulgated and administers 15 RCNY 18-38 (a) (2) within New York City's watershed. It is well settled "that the interpretation given to a regulation by the agency which promulgated it and is responsible for its administration is entitled to deference if that interpretation is not irrational or

unreasonable" (*Matter of Gaines v New York State Div. of Hous. & Community Renewal*, 90 NY2d 545, 548-549 [1997]; *see Matter of Peckham v Calogero*, 12 NY3d 424, 431 [2009]). Moreover, the fact that the agency could "legitimately have chosen to read the statute more generously" (*Matter of Brooklyn Assembly Halls of Jehovah's Witnesses, Inc. v Department of Envtl. Protection of City of N.Y.*, 11 NY3d 327, 335 [2008]) or "that the regulation could be interpreted in another way[ ] does not make the interpretation irrational" (*Matter of Elcor Health Servs. v Novello*, 100 NY2d 273, 280 [2003]). Contrary to plaintiff's argument, NYCDEP's interpretation of its *own* regulation does not amount to a change in state law or a modification of DOH's regulations. Nor is NYCDEP's interpretation inconsistent with state law merely because it may result in supplementing the state regulation with an additional requirement for the siting of STSs—a subject on which further regulation by NYCDEP is contemplated by statute (*see* Public Health Law § 1100 [1]; *see also Matter of Bethpage Water Dist. v Daines*, 67 AD3d 1088, 1091-1093 [2009], *lv denied* 14 NY3d 707 [2010]; *Metropolitan Funeral Directors Assn. v City of New York*, 182 Misc 2d 977, 984-985 [1999]; *see generally Jancyn Mfg. Corp. v County of Suffolk*, 71 NY2d 91, 100 [1987]). In our view, given NYCDEP's express authority to promulgate rules and regulations for the protection of the City's water supply and to "enforce the rules and regulations . . . in a manner consistent with applicable" state law (15 RCNY 18-51 [a]; *accord* 10 NYCRR 128-5.1 [a]), we cannot conclude that its application of a strict literal interpretation of the regulation as prohibiting modification of slopes greater than 15% without a variance is irrational.

Similarly lacking in merit are plaintiff's claims that NYCDEP violated 42 USC § 1983 by issuing the notice of violation without authority, inspecting its property without a search warrant, and depriving it of substantive due process. Contrary to plaintiff's argument that NYCDEP did not have jurisdiction to issue the notice of violation, NYCDEP is empowered to enforce its regulations within the City's watershed, as detailed above (*see* Public Health Law art 11; 10 NYCRR 128-5.1; 15 RCNY 18-51; *Worcester Creameries Corp. v City of New York*, 54 AD3d 87, 89 [2008]; *see also People v Van Buren*, 4 NY3d 640, 649 [2005]). Furthermore, a search warrant was not required under the circumstances presented herein. Damrath entered the subdivision at the request of another homeowner and, once inside, observed plainly visible construction activity on plaintiff's 650-foot open road (*see People v Reynolds*, 71 NY2d 552, 557 [1988]; *People v Farenga*, 42 NY2d 1092, 1093 [1977]; *City of Rochester v Teremy*, 2 AD3d 1349, 1350 [2003], *appeal dismissed* 2 NY3d 759 [2004];

*Frje Holding Corp. v Jorling*, 193 AD2d 1013, 1014-1015 [1993]; *cf. People v Scott*, 79 NY2d 474, 491 [1992]). Finally, to establish its substantive due process claim under section 1983, plaintiff was required to demonstrate "(1) the deprivation of a protectable property interest and (2) that 'the governmental action was wholly without legal justification' " (*Matter of Ken Mar Dev., Inc. v Department of Pub. Works of City of Saratoga Springs*, 53 AD3d 1020, 1024-1025 [2008], quoting *Bower Assoc. v Town of Pleasant Val.*, 2 NY3d 617, 627 [2004]). Inasmuch as plaintiff failed to obtain the necessary approval before commencing construction, it failed to demonstrate that it had "a legitimate claim of entitlement to continue construction" (*Bower Assoc. v Town of Pleasant Val.*, 2 NY3d at 627 [internal quotation marks and citation omitted]). Nor was NYCDEP's issuance of the notice of violation arbitrary in the constitutional sense, i.e., "so outrageously arbitrary as to constitute a gross abuse of governmental authority" (*id.* at 629 [internal quotation marks and citation omitted])—indeed, under the circumstances, it cannot be said that NYCDEP's conduct was arbitrary in any sense.[2]

We have considered plaintiff's remaining arguments and conclude that they are lacking in merit.

Peters, Spain, Malone Jr. and Kavanagh, JJ., concur. Ordered that the judgment is affirmed, without costs.

---

**2.** Plaintiff's argument that the notice of violation was issued wholly without legal justification is based upon its misreading of Supreme Court's judgment. The court did not, as plaintiff asserts, find that it had not violated any law or regulation, or that it did not need to submit an SPPP if it simply proceeded in a piecemeal fashion by constructing only small portions of the gravel road at a time. Rather, the court expressly rejected plaintiff's "staged development" argument, and relied upon the admission of an engineering firm retained by plaintiff that the contemplated project would result in a "combined disturbance in excess of five acres" as the basis for its declaration that "there is reasonable cause to believe petitioner has violated watershed regulations of" NYCDEP. Given the court's findings in this regard, its second declaratory paragraph must be read as requiring plaintiff to submit an SPPP in connection with its gravel road or in connection with the construction of a single family residence if construction of the residence will disturb more than two acres of soil.