*1245 Devine, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Schenectady County) to review a determination of respondent which, among other things, revoked petitioner’s licenses to participate in pari-mutuel harness racing for a period of three years.
Petitioner, as a licensed trainer of harness racehorses, is prohibited from allowing any horse in his “custody, care or control to be started” in a race if certain substances are administered to the horse within a specified period prior to the race (9 NYCRR 4120.4 [a]; see 9 NYCRR 4120.2). All of the numerous random drug tests of horses in petitioner’s care were negative. The New York State Racing and Wagering Board nevertheless obtained veterinary records insinuating that petitioner ran afoul of the rule with regard to multiple substances in the lead-up to hundreds of harness races run between January 2010 and April 2012. The Board sought to suspend or revoke petitioner’s licenses and exclude him from New York racetracks due to those violations (see Matter of Pena v New York State Gaming Commn., 127 AD3d 1287, 1288 [2015], appeal dismissed 25 NY3d 1059 [2015], lv denied 26 NY3d 903 [2015]).
The administrative hearing on the charges focused in significant part on the admissibility of the veterinary records and their probative value, and the Hearing Officer admitted the records into evidence. At the conclusion of the hearing, the Hearing Officer sustained the charges in full and recommended that petitioner’s licenses be revoked, that he not be allowed to reapply for three years and that he be fined $200 for each violation. Respondent dismissed two of the 1,719 violations, but otherwise adopted the Hearing Officer’s recommendations.[1] Petitioner then commenced the present CPLR article 78 proceeding, and Supreme Court transferred the matter to this Court and stayed respondent’s determination.
The determination against petitioner will be upheld if it is supported by substantial evidence, defined as “such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact” (People ex rel. Vega v Smith, 66 *1246 NY2d 130, 139 [1985] [internal quotation marks and citation omitted]; accord Matter of Bottom v Annucci, 26 NY3d 983, 984-985 [2015]). Petitioner does not dispute that respondent’s determination may be based upon hearsay evidence such as information contained in the veterinary records (see Matter of Gerald HH. v Carrion, 130 AD3d 1174, 1175 [2015]; Matter of Nolan v Constantine, 166 AD2d 778, 779 [1990]). Moreover, there is no question that the records were admissible in the administrative context even though they were not certified (see Racing, Pari-Mutuel Wagering and Breeding Law § 321; State Administrative Procedure Act § 306 [1]; Matter of Ragin v New York City Employees’ Retirement Sys., 19 AD3d 603, 604 [2005]). The issue, as a result, is whether the records were “sufficiently relevant and probative” to constitute substantial evidence for the determination (People ex rel. Vega v Smith, 66 NY2d at 139; see Matter of Doctor v New York State Off. of Alcoholism & Substance Abuse Servs., 112 AD3d 1020, 1022 [2013]; Matter of Nolan v Constantine, 166 AD2d at 779).
Horses in petitioner’s care are stabled in New Jersey and, as such, respondent’s director of investigations, Joel Leveson, requested the assistance of the New Jersey Racing Commission in obtaining the veterinary records. Joseph Trapanese, the administrator of investigations for the New Jersey Racing Commission, procured records from January 2010 through April 2012 directly from the veterinary practice that treated horses under petitioner’s care and prepared the records. The veterinarian himself declined to certify the records, which were essentially billing statements that omitted a good deal of the information required of formal treatment records, but testimony at the hearing indicated that those deficiencies were normal in the milieu of harness racing. The records could accordingly be admitted to make whatever factual findings could be drawn from the sparse information contained in them (see e.g. Matter of Szczepaniak v City of Rochester, 101 AD3d 1620, 1621 [2012]; Matter of Shuman v New York State Racing & Wagering Bd., 40 AD3d 385, 388 [2007]).
That being said, the pivotal question in this case is whether substances were administered to horses within prohibited time frames, and the records lacked “substantial probative eviden-tiary value” on that key issue (Matter of Brown v Murphy, 43 AD2d 524, 525 [1973]). The records associate a date with each entry, but fail to indicate what the date represents. The only explanatory evidence in the record from anyone associated with the veterinary practice was in the cover letter transmitting the records to Trapanese, which advised that the dates *1247 listed in the records could reflect “the day that a treatment was prescribed, [the] horse was treated or [the] medication dispensed.” A veterinarian testifying on petitioner’s behalf further stated that the lack of specificity in the records left one unable to “tell whether [the various substances] were dispensed or administered in all cases.” Leveson nevertheless speculated, by simply relying on custom, that the records gave the dates of treatment, but made no effort to grapple with the affirmative statement of the practice that such was not the case. In fact, his efforts were limited to a telephone conversation with petitioner in which petitioner reiterated that the records contained billing errors with regard to the timing of treatments.[2] In short, while respondent was free to consider the records, they do not constitute substantial evidence for the essential finding that horses in petitioner’s care were administered substances within the prohibited time frames (see Matter of Laterza v New York State Racing & Wagering Bd., 68 AD3d 1509, 1512-1513 [2009]; cf. Matter of Fusco v New York State Racing & Wagering Bd., 88 AD3d 1240, 1241-1242 [2011], lv denied 18 NY3d 809 [2012]; Matter of Shuman v New York State Racing & Wagering Bd., 40 AD3d at 386-388). The determination, which was based upon the records, must therefore be annulled.
Petitioner’s remaining contentions, to the extent they are not academic in light of the foregoing, have been examined and found to lack merit.
Lynch, Rose and Mulvey, JJ., concur.

. During the pendency of the administrative proceedings, the powers and functions of the Board were transferred to respondent (see Racing, PariMutuel Wagering and Breeding Law art 1, as added by L 2012, ch 60, part A, §1).

. Respondent asserts that petitioner admitted in the telephone conversation with Leveson to administering Robinul (also known as glycopyrrolate) to many horses three “days away from the race” in violation of the 96-hour rule set by 9 NYCRR 4120.2 (g). The Hearing Officer did not explicitly rely upon that conversation, which is, in any case, far from clear as to when that substance was administered.