Pirro v Board of Trustees of the Vil. of Groton (2022 NY Slip Op 01358)





Pirro v Board of Trustees of the Vil. of Groton


2022 NY Slip Op 01358


Decided on March 3, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:March 3, 2022

532307
[*1]Norfe J. Pirro et al., Appellants,
v
Board of Trustees of the Village of Groton et al., Respondents.

Calendar Date:January 11, 2022

Before:Garry, P.J., Lynch, Pritzker, Colangelo and Ceresia, JJ.

Allen & Maines, Ithaca (Russell E. Maines of counsel), for appellants.
Lippman O'Connor, Buffalo (Gerard E. O'Connor of counsel), for respondents.



Lynch, J.
Appeal from an order of the Supreme Court (McBride, J.), entered October 1, 2020 in Tompkins County, which granted defendants' motion for summary judgment dismissing the complaint.
This matter has its origins in a challenge to a former local law of defendant Village of Groton, entitled the "Property and Building Nuisance Law" (hereinafter the Nuisance Law). As more fully set forth in two prior decisions of this Court (Board of Trustees of the Vil. of Groton v Pirro, 170 AD3d 1479 [2019] [hereinafter Pirro II]; Board of Trustees of the Vil. of Groton v Pirro, 152 AD3d 149 [2017] [hereinafter Pirro I]), defendant Board of Trustees of the Village of Groton (hereinafter the Board) brought an action against plaintiffs — owners of rental properties in the Village — alleging that they had maintained unabated public nuisances on certain of their properties in violation of the Nuisance Law. Plaintiffs answered and commenced a CPLR article 78 proceeding seeking to enjoin enforcement of the Nuisance Law.
Supreme Court (Rumsey, J.) partially granted plaintiffs' motion for summary judgment to the extent of holding that the Nuisance Law's administrative remedies were unconstitutional and enjoining enforcement of that article, but otherwise declined to invalidate the law in its entirety (see Board of Trustees of the Vil. of Groton v Pirro, 170 AD3d at 1480). Upon plaintiffs' appeal, this Court modified by granting plaintiffs' motion for summary judgment in its entirety and declaring that the Nuisance Law was "overbroad and facially invalid under the First Amendment" (Board of Trustees of the Vil. of Groton v Pirro, 152 AD3d at 160-161). As to the finding of facial invalidity under the First Amendment, this Court held that, because the Nuisance Law did not prohibit the assessment of nuisance points against a property for police involvement thereat, the law violated the right of plaintiffs' tenants to petition the government for redress of grievances by deterring them from calling the police in response to crimes committed at their properties (id. at 157-160). This Court later increased an award of counsel fees in plaintiffs' favor under 42 USC § 1988 (Board of Trustees of the Vil. of Groton v Pirro, 170 AD3d at 1480-1481).
In June 2018, plaintiffs commenced the instant action against defendants asserting four causes of action in connection with enforcement of the Nuisance Law: (1) malicious prosecution; (2) claims under 42 USC § 1983 for violations of plaintiffs' rights under the First, Fifth and Fourteenth Amendments; (3) negligent supervision; and (4) violations of the Fair Housing Act (see 42 USC § 3601 et seq. [hereinafter FHA]). After joinder of issue and discovery, defendants moved for summary judgment dismissing the complaint. Supreme Court (McBride, J.) granted defendants' motion, finding insufficient proof to sustain any of the causes of action. Plaintiffs appeal.
Contrary to plaintiffs' contention, Supreme Court properly dismissed the first [*2]cause of action for malicious prosecution. "The elements of the tort of malicious prosecution of a civil action are (1) prosecution of a civil action against the plaintiff, (2) by or at the instance of the defendant, (3) without probable cause, (4) with malice, (5) which terminated in favor of the plaintiff, and (6) causing special injury" (347 Cent. Park Assoc., LLC v Pine Top Assoc., LLC, 144 AD3d 785, 785-786 [2016] [internal quotation marks and citations omitted], lv denied 29 NY3d 909 [2017]; see Minasian v Lubow, 49 AD3d 1033, 1034 [2008]). A defendant need not establish probable cause for each claim underlying the civil action to defend against a malicious prosecution claim. Rather, it is sufficient that "probable cause existed for the prior proceeding as a whole" (Perryman v Village of Saranac Lake, 41 AD3d 1080, 1080 [2007]). The "want of probable cause must be patent" (Fink v Shawangunk Conservancy, Inc., 15 AD3d 754, 755 [2005] [internal quotation marks and citation omitted]) and, if "at least some causes of action in the underlying complaint had potential merit," such a claim will fail (Perryman v Village of Saranac Lake, 41 AD3d at 1082 [internal quotation marks and citations omitted; emphasis added]).
In dismissing the first cause of action, Supreme Court correctly noted that the Nuisance Law had not yet been invalidated by the time that defendants commenced the civil action against plaintiffs thereunder. The record demonstrates that several alleged Nuisance Law violations had occurred at plaintiffs' properties by the time the action was commenced and, notably, other property owners also received points under the Nuisance Law — negating an inference that plaintiffs were singled out for enforcement. In these circumstances, defendants have satisfied their prima facie burden to demonstrate that the action, "'considered as a whole, was not entirely without probable cause'" (347 Cent. Park Assoc., LLC v Pine Top Assoc., LLC, 144 AD3d at 786, quoting Perryman v Village of Saranac Lake, 41 AD3d at 1082).
In opposition, plaintiffs did not "produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action" (Matter of Fernandez v Town of Benson, 196 AD3d 1019, 1023 [2021] [internal quotation marks and citations omitted]). Plaintiffs' submissions tend to substantiate defendants' assertion that the civil action was commenced upon a good-faith belief that plaintiffs had violated the Nuisance Law and not due to any malice on the part of defendants. To that end, plaintiffs submitted, among other things, police reports and lists of incidents that occurred at their properties, which formed the basis of their accrual of nuisance points. The record also contains a January 2016 affidavit from Charles Rankin, the Village clerk at the time of enforcement, who averred that the Board commenced its action against plaintiffs when it was clear that plaintiffs did not intend [*3]to abate the alleged nuisances. Not to be overlooked is the fact that defendants waited approximately one year to commence the action against plaintiffs after they notified them of the alleged nuisances, tending to negate an inference of malice. In these circumstances, we agree with Supreme Court that plaintiffs did not raise a triable issue of fact on the malicious prosecution claim (see 347 Cent. Park Assoc., LLC v Pine Top Assoc., LLC, 144 AD3d at 786).
Nor did Supreme Court err in dismissing the second cause of action asserting violations of the First, Fifth and Fourteenth Amendments to the US Constitution. As for the First Amendment claim, Supreme Court found, in essence, that plaintiffs lacked standing to assert their tenants' constitutional rights. On appeal, plaintiffs imply that Supreme Court improperly considered the standing issue because defendants failed to raise standing as a defense in their answer. Although the defense of standing will generally be waived if a defendant fails to raise it in an answer or pre-answer motion (see CPLR 3211 [e]; US Bank N.A. v Nelson, 36 NY3d 998, 999 [2020]), the complaint provided no notice of a potential standing issue, as it explicitly stated that "[t]he actions of defendants violated the rights of . . . plaintiffs secured by the Constitution of the United States, including their rights of petition or association under the First Amendment" (emphasis added). Because the complaint asserted a violation of plaintiffs' own constitutional rights — which they clearly had standing to litigate — and was devoid of any implication that plaintiffs were asserting the rights of their tenants, defendants cannot be faulted for failing to raise a standing defense in their answer.
In subsequent submissions and during oral argument before this Court, plaintiffs clarified that they were "not purporting to assert a right of the tenants," but, rather, were "claiming that the violation of the tenants' rights caused [plaintiffs] economic harm." However, 42 USC § 1983 would not provide plaintiffs with relief in these circumstances. "The essential elements of [a] cause of action [under 42 USC § 1983] are conduct committed by a person acting under color of state law, which deprived the plaintiff of rights, privileges, or immunities secured . . . by the Constitution or laws of the United States" (Maio v Kralik, 70 AD3d 1, 11-12 [2009] [internal quotation marks and citations omitted]; see American Mfrs. Mut. Ins. Co. v Sullivan, 526 US 40, 49-50 [1999]; Pitchell v Callan, 13 F3d 545, 547 [2d Cir 1994]; Everett v Eastchester Police Dept., 157 AD3d 658, 659 [2018], Lucas v Devlin, 139 AD3d 1196, 1197 [2016], lv denied 28 NY3d 901 [2016]). The person acting under color of state law is "liable to the party injured" by the constitutional deprivation (42 USC § 1983). Stated differently, damages under 42 USC § 1983 are available for a violation of a litigant's own constitutional rights, not for the deprivation of the rights [*4]of others (see Nnebe v Daus, 644 F3d 147, 156 [2d Cir 2011] [interpreting the rights secured by 42 USC § 1983 "to be personal to those purportedly injured" (internal quotation marks and citation omitted)]; Archuleta v McShan, 897 F2d 495, 497 [10th Cir 1990] [recognizing the "well-settled principle that a (42 USC &sect) 1983 claim must be based upon the violation of the plaintiff's personal rights, and not the rights of someone else"]; see also McKelvie v Cooper, 190 F3d 58, 64 [2d Cir 1999]). Accordingly, plaintiffs lack standing to seek damages under 42 USC § 1983 for a violation of their tenants' rights (see Gregory v McKennon, 430 Fed Appx 306, 310 [5th Cir 2011]; National Rifle Assn. of Am. v Cuomo, 480 F Supp 3d 404, 411 [2020], affd in part and appeal dismissed in part sub. nom. National Rifle Assn. of Am. v Hochul, ___ F3d ___, 2021 WL 5313713, 2021 US App LEXIS 33909 [2d Cir, Nov. 16, 2021, No. 20-3187-CV]).[FN1] In any event, to the extent that plaintiffs argue that they are entitled to damages because the tenants' speech rights were violated by enforcement of the Nuisance Law, we note that the claimed economic harm to plaintiffs resulting from their tenants' evictions stemmed from plaintiffs' own proposal under the abatement plan, not any action compelled by defendants. Accordingly, any harm to plaintiffs resulting from the evictions did not derive from the conduct of a Village official acting under color of state law so as to support a claim under 42 USC § 1983.
To the extent that plaintiffs are, in fact, claiming a violation of their own constitutional rights by enforcement of the Nuisance Law, Supreme Court properly dismissed so much of the second cause of action as alleged a First Amendment violation. The complaint asserted that enforcement of the Nuisance Law violated plaintiffs' First Amendment right to petition the government for redress of grievances. As we explained in Pirro I, that right is "'one of the most precious of the liberties safeguarded by the Bill of Rights'" (Board of Trustees of the Vil. of Groton v Pirro, 152 AD3d at 157, quoting BE & K Constr. Co. v NLRB, 536 US 516, 524 [2002]). It includes "the right to make criminal complaints to the police" (Board of Trustees of the Vil. of Groton v Pirro, 152 AD3d at 157; see Jackson v New York State, 381 F Supp 2d 80, 89 [ND NY 2005]), and the "right of access to the courts" (BE & K Constr. Co. v NLRB, 536 US at 525 [internal quotation marks, brackets and citation omitted]).
In Pirro I, we found that the right of plaintiffs' tenants to petition the government for redress of grievances was chilled by enforcement of the Nuisance Law because it dissuaded them from seeking police assistance in response to crime at their properties. No analogous finding may be made with respect to plaintiffs' right in this regard. The evidence demonstrates that plaintiffs were provided with notice of the alleged nuisances at their properties, were given the opportunity to submit an abatement plan[*5], twice met with the Village attorney to address the alleged violations and commenced litigation to enjoin enforcement of the Nuisance Law, which was ultimately successful. The point here is that plaintiffs were given the opportunity to and ultimately did petition the government for redress of grievances regarding the Nuisance Law. For all the foregoing reasons, plaintiffs' First Amendment claim cannot be sustained.[FN2]
Supreme Court also properly dismissed so much of plaintiffs' second cause of action as asserted an equal protection violation, which was based upon both a selective enforcement theory and a disparate impact theory. With respect to the former, plaintiffs assert, in essence, that defendants selectively enforced the Nuisance Law against them due to the population of tenants to which they rented. As to the latter theory, plaintiffs argue that enforcement of the Nuisance Law resulted in a disparate impact upon domestic violence victims, a population comprised primarily of women.
"To establish a claim for a violation of equal protection in the context of selective enforcement, a plaintiff must demonstrate that (1) he or she, compared with others similarly situated, was selectively treated, and (2) such selective enforcement was based upon impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure him or her" (Staatsburg Water Co. v Dutchess County, 291 AD2d 552, 553-554 [2002] [citation omitted], lv denied 98 NY2d 609 [2002]; see Crowley v Courville, 76 F3d 47, 52-53 [2d Cir 1996]; Bower Assoc. v Town of Pleasant Val., 2 NY3d 617, 631 [2004]). "[A]n equal protection cause of action based upon a disproportionate impact upon a suspect class requires establishment of intentional discrimination" (Campaign for Fiscal Equity v State of New York, 86 NY2d 307, 320 [1995]; see Arlington Heights v Metropolitan Housing Development Corp., 429 US 252, 265 [1977]).
With respect to the selective enforcement claim, nothing in the record suggests that plaintiffs were singled out for enforcement of the Nuisance Law due to the population of tenants to which they rented — i.e., individuals whose rent was paid by the Tompkins County Department of Social Services. Although plaintiff Norfe J. Pirro testified during a deposition that he attended a Board meeting in which an unidentified Board member indicated that the Board did not want, within the Village, the population of tenants to which plaintiffs were renting, there is nothing in the record indicating that this unidentified Board member participated in the vote to commence the civil action against plaintiffs. More importantly, there was testimony that other landlords in the Village also rented to tenants involved with the Department of Social Services, but Timothy Williams — the former officer in charge of the Village of Groton Police Department — was unaware of any other landlords besides plaintiffs [*6]being the subject of a civil action under the Nuisance Law, indicating that enforcement against plaintiffs was not based upon the population of tenants to which they rented. Although there was testimony indicating that other property owners besides plaintiffs also accrued points under the Nuisance Law yet did not have a civil enforcement action commenced against them, the record demonstrates that plaintiffs' properties were the subject of a disproportionate number of complaints and, unlike other owners who accrued points, plaintiffs did not appropriately abate the issues. Stated simply, plaintiffs have not shown that they were similarly situated with the other landlords who accrued points under the Nuisance Law but did not have a civil action commenced against them thereunder (see Tarantino v City of Hornell, 615 F Supp 2d 102, 113 [WD NY 2009], affd 378 Fed Appx 68 [2d Cir 2010], cert denied 562 US 1044 [2010]). The disparate impact claim also fails, as nothing in the record indicates that Village officials intended to discriminate against victims of domestic violence in their enforcement of the Nuisance Law (see generally Arlington Heights v Metropolitan Housing Development Corp., 429 US at 265).
So much of plaintiffs' second cause of action as alleged a due process violation was also properly dismissed. The Fourteenth Amendment to the US Constitution prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law" (US Const 14th Amend, § 1; see US Const 5th Amend). A procedural due process claim requires proof of "(1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process" (Bryant v New York State Educ. Dept., 692 F3d 202, 218 [2d Cir 2012], cert denied 569 US 958 [2013]). A substantive due process claim in this context requires proof of "(1) the deprivation of protectable property interest and (2) that the governmental action was wholly without legal justification" (Eagles Landing, LLC v New York City Dept. of Envtl. Protection, 75 AD3d 935, 939 [2010] [internal quotation marks and citations omitted], lv denied 16 NY3d 710 [2011]).
In their appellate brief, plaintiffs assert that defendants "failed to follow the [D]ue [P]rocess [C]lause — both substantive and procedural — by failing to follow the requirements set forth in their own legislation" and failing to "provide notice that they had not . . . accepted Pirro's abatement plan." However, courts "have explicitly and repeatedly rejected the proposition that an individual has an interest in a [s]tate-created procedural device," as "[t]he mere fact that the government has established certain procedures does not mean that the procedures thereby become substantive rights entitled to [f]ederal constitutional protection under the Due Process Clause" (Meyers v City of New York, 208 AD2d 258, 263 [1995]). Accordingly, plaintiffs' due process claim, to the extent based upon defendants' [*7]alleged failure to follow the procedures set forth in the Nuisance Law, is not actionable.
Plaintiffs also assert that defendants waited to provide notice of the alleged Nuisance Law violations until several points had already accrued on their properties. Plaintiffs' assertion in this respect fails to make out a due process violation, as they have not demonstrated how this alleged delay in notice deprived them of a liberty or property interest (see generally id.). In any event, the record demonstrates that defendants provided notice to plaintiffs with respect to the alleged violations at their properties and the points that accrued thereon. They also twice met with Pirro regarding the violations and gave him an opportunity to submit an abatement plan. In these circumstances, plaintiffs' do not have a viable due process claim.
Supreme Court also properly dismissed the third cause of action alleging negligent supervision. The underlying nature of this claim is difficult to parse, as the complaint merely alleged that "[c]ertain defendants . . . negligently supervised persons charged with enforcing or prosecuting the [Nuisance Law]." Plaintiffs appear to be asserting that, because defendants delegated enforcement of the Nuisance Law to the police department, they are liable for any negligence on the police department's part in failing to honor the abatement plan proposed by Pirro or in misappropriating nuisance points. To make out a claim for negligent supervision, there must be "proof that [a] defendant, as employer, knew or should have known of the employee's propensity for the conduct which caused the injury" (Kinge v State of New York, 79 AD3d 1473, 1476 [2010] [internal quotation marks and citations omitted]; see Sato v Correa, 272 AD2d 389, 389-390 [2000]). Liability for negligent supervision does not attach where the alleged injury was caused by an employee acting within the scope of his or her duties (see McCarthy v Mario Enters., Inc., 163 AD3d 1135, 1137 [2018]; Rossetti v Board of Educ. of Schalmont Cent. School Dist., 277 AD2d 668, 670 [2000]). Plaintiffs do not adequately articulate the basis for their assertion that the police department negligently enforced the Nuisance Law. Even assuming, without deciding, that negligence occurred in that respect, there was no proof that the claimed injury resulting from the negligence was caused by an employee of the police department acting outside the scope of his or her duties (see McCarthy v Mario Enters., Inc., 163 AD3d at 1137).
The fourth cause of action alleging violations of the FHA was also properly dismissed. Broadly stated, the FHA prohibits discriminatory housing practices based upon race, color, religion, sex, familial status, or national origin (see 42 USC § 3604 [b]). A civil action to enforce the FHA may be brought by any "aggrieved person" (42 USC § 3613 [a] [1] [A]), defined as "'any person who' either 'claims to have been injured by a discriminatory housing practice' [*8]or believes that such an injury 'is about to occur'" (Bank of America Corp. v Miami, 581 US ___, ___, 137 S Ct 1296, 1303 [2017], quoting 42 USC 3602 [i] [1]-[2]).[FN3] Plaintiffs' claims under the FHA fail because they cannot show a "direct relation between the injury asserted and the injurious conduct alleged" (Bank of America Corp. v Miami, 137 S Ct at 1306 [internal quotation marks and citation omitted]). Plaintiffs contend that they raised a question of fact with respect to their FHA cause of action insofar as they submitted proof that Pirro was forced to evict domestic violence victims — i.e., a class of individuals primarily made up of women — from his properties due to enforcement of the Nuisance Law. The proof, however, established that, even if defendants assigned some nuisance points to plaintiffs' properties based upon police calls regarding domestic violence incidents, plaintiffs were not compelled by defendants or the Nuisance Law itself to penalize tenants involved in domestic violence incidents with eviction or some other adverse housing action cognizable under the FHA. Rather, it was Pirro — through implementation of an abatement plan in which he chose eviction as a means to remedy the violations — that caused the claimed injury. Defendants' enforcement of the Nuisance Law and any resulting injury to plaintiffs stemming from eviction of domestic violence victims is simply too attenuated to establish a cognizable FHA claim (see generally Tax Equity Now NY LLC v City of New York, 182 AD3d 148, 167 [2020], appeal dismissed 35 NY3d 1077 [2020]).
Plaintiffs' remaining contentions, to the extent not explicitly addressed herein, have been considered and found lacking in merit.
Garry, P.J., Pritzker, Colangelo and Ceresia, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: In their brief, plaintiffs cite Secretary of State of Md. v Joseph H. Munson Co., Inc. (467 US 947 [1984]) in support of the proposition that they have standing to seek damages for the violation of their tenants' constitutional rights. That case stands for the proposition that a plaintiff has third-party standing to assert the rights of others "[w]here the claim is that [the] statute is overly broad in violation of the First Amendment" (id. at 957). That was the claim raised and litigated in Pirro I; however, it is not the claim being asserted in this action.

Footnote 2: As part of the First Amendment claim, plaintiffs also alleged that defendants' actions in enforcing the Nuisance Law violated their right of "association" under the First Amendment. Supreme Court rejected this claim, finding that it sounded in the right of intimate association, which does not apply to business relationships such as the landlord-tenant relationships here (see Hurley v Town of Southampton, 2018 WL 3941944, *7, 2018 US Dist LEXIS 137089, *20-21 [ED NY, Aug. 13, 2018, CV 17-5543 (JS) (AKT)]). In their reply brief on appeal, plaintiffs assert that they are not claiming a violation of freedom of association rights. Accordingly, any claim in this respect has been abandoned.

Footnote 3: In dismissing the FHA claim, Supreme Court concluded — without explanation — that plaintiffs were not aggrieved persons within the meaning of 42 USC § 3613 (a) (1) (A). However, in addition to parties directly harmed by discriminatory housing practices — i.e., tenants, residents, applicants, etc. — aggrieved persons within the meaning of the statute may include third parties and entities claiming to have suffered economic injuries within the zone of interests protected by the FHA (see Bank of America Corp. v Miami, 137 S Ct at 1303-1304; Gladstone, Realtors v Village of Bellwood, 441 US 91, 110-111 [1979]). To the extent that Supreme Court determined that plaintiffs were not aggrieved within the meaning of the FHA because they are landlords, not tenants, that reasoning was error.