Matter of Rice v New York State Gaming Commission (2023 NY Slip Op 03058)

Matter of Rice v New York State Gaming Commission

2023 NY Slip Op 03058

Decided on June 8, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 8, 2023

535481
[*1]In the Matter of Linda Rice, Appellant-Petitioner,
v
New York State Gaming Commission, Respondent-Respondent.

Calendar Date:April 26, 2023

Before:Lynch, J.P., Clark, Aarons, Reynolds Fitzgerald and McShan, JJ.

Meyer, Suozzi, English & Klein, PC, Garden City (Andrew J. Turro of counsel), for appellant-petitioner.
Letitia James, Attorney General, Albany (Victor Paladino of counsel), for respondent-respondent.

Lynch, J.P.
(1) Appeal from an order of the Supreme Court (Mark L. Powers, J.), entered May 18, 2022 in Schenectady County, which denied petitioner's request for a declaratory judgment, and (2) proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Schenectady County) to, among other things, review a determination of respondent revoking petitioner's license to participate in thoroughbred racing for at least three years.
Petitioner has been licensed in New York as a thoroughbred racehorse trainer since 1998. In November 2019, respondent charged petitioner by notice of hearing with, as relevant here, corrupt and improper conduct in violation of Racing, Pari-Mutuel Wagering and Breeding Law § 220 (2) and 9 NYCRR 4042.1 (f) for "receiv[ing] regular, continual and improper access to the confidential names and other information concerning the other horses entered in races at the New York Racing Association, Inc. (NYRA), before the entries closed" (internal quotation marks omitted). This information was allegedly used to her advantage in deciding whether or not to enter horses she was training in certain "overnight" races, meaning "race[s] for which the entries close 72 hours . . . or less before the time set for the first race of the day on which such race is to be run" (9 NYCRR 4020.3 [n]). Following an eight-day hearing, a Hearing Officer concluded that certain information petitioner received, i.e., the names and past performances of horses, was confidential information and that petitioner's knowing receipt and use of such information from early 2012 to approximately August 2014 constituted improper and corrupt conduct in violation of 9 NYCRR 4042.1 (f). The Hearing Officer recommended dismissing the second charge of bribery. As a proposed penalty, the Hearing Officer recommended a $50,000 fine and the revocation of petitioner's license for a period of no less than three years. Respondent adopted that recommendation, adding that Racing, Pari-Mutuel Wagering and Breeding Law § 116 authorized a fine of up to $25,000 for each violation.
Thereafter, petitioner commenced this combined proceeding pursuant to CPLR article 78 and action for declaratory judgment seeking to annul respondent's determination, challenging 9 NYCRR 4042.1 (f) as unconstitutionally vague and the penalty imposed. After issue was joined, Supreme Court transferred the CPLR article 78 portion of the proceeding to this Court as raising a question of substantial evidence. The court further determined that 9 NYCRR 4042.1 (f) is not unconstitutionally vague on its face or as applied. Petitioner appeals the order and continues to challenge respondent's determination on the transferred aspect of the matter.[FN1]
To better understand this dispute, a brief description of the process for scheduling horse races is warranted. As explained by Martin Panza, who joined NYRA in November 2013 and serves as senior vice president of racing operations, schedules [*2]for horse racing meets are published in advance in "condition books." The schedules are designed to include horses of comparable skill in races to assure competition. The number of horses in a given race may vary but the objective is to average eight horses per race. On race entry days involving "overnight" races, NYRA's Racing Office clerks would reach out to trainers to encourage them to enter their horses in lightly filled races, typically where there are fewer than six entries — a process called "hustling." This dispute centers on the type of information provided to petitioner during the "hustling" process.
Initially, we agree with Supreme Court's determination that 9 NYCRR 4042.1 (f) is not unconstitutionally vague for prohibiting "any improper, corrupt . . . act or practice in relation to racing." Under the due process vagueness doctrine, regulatory provisions must give persons of ordinary intelligence within an affected profession fair notice of what conduct is prohibited (see Matter of Gold v Lomenzo, 29 NY2d 468, 477 [1972]; Perez v Hoblock, 368 F3d 166, 174-176 [2d Cir 2004]; Sullivan v New York State Joint Commn. on Pub. Ethics, 207 AD3d 117, 129 [3d Dept 2022]). On its face, a licensed trainer would certainly understand that obtaining confidential information pertinent to a race, to the disadvantage of other trainers, would qualify as "improper, corrupt" conduct. Where, as here, petitioner challenges the regulation on an as-applied basis, "our primary focus must be on whether the specific conduct at issue . . . falls with sufficient clarity within the ambit of the regulation" (Perez v Hoblock, 368 F3d at 175). In other words, "we must evaluate [petitioner's] underlying conduct by reference to the norms of the racing community" (id. at 175-176). Even though NYRA had not issued a written policy setting parameters on the information that could be disclosed during the "overnight" hustling process, as discussed below, the record includes substantial evidence that it was commonly understood in racing circles that the disclosure of horse names was prohibited.
As detailed in the Hearing Officer's report, each of the NYRA witnesses confirmed that certain information about horses already entered in a race was shared with trainers. The disclosure would include the number of horses already entered, whether there was a speed horse or a closer in the race, how well the trainer's own horse would fit in, and even the potential odds — the idea being that the racing clerks provided enough information to assure the trainer that his or her horse would be competitive if entered. Panza conceded there was no written rule restricting the information a racing clerk could disclose during the hustling process, but maintained it was a "universal rule" not to disclose the names or past performances of the horses already entered. Doing so, in Panza's opinion, would provide a trainer with an unfair advantage over other trainers in that the trainer "[could] look [*3]at who is in that race and decide whether [he or she] want[ed] to be a part of that." Both Chris Camac, an assistant racing secretary, and Braulio Baeza, who has served as a racing steward for both NYRA and respondent, agreed that the information would give the trainer a "huge advantage." That said, Paul Campo, who served as racing secretary for NYRA from 2009 until November 2013, testified that racing clerks could also disclose the past performances of horses and name the trainers and jockeys in the race. For his part, Panza testified that providing past performances was not allowed and tantamount to providing a horse's name. Despite this discrepancy between the two racing secretaries in charge of the racing office "hustling" process, no witness testified that providing a horse's name was allowed.
This record shows that petitioner was provided with the actual names of horses entered in "overnight" races by a racing clerk, Jose Morales, on a regular basis throughout the 2012-2014 period at issue. Her primary position is that she was neither aware that such information was confidential, nor that the disclosure violated any NYRA rule because she observed other trainers receive the names of horses in the racing office. Several trainers who testified on petitioner's behalf confirmed that a racing clerk would occasionally reveal the names of horses in an "overnight" race. For his part, Morales acknowledged that he knew that providing this information to petitioner was wrong.
Where an administrative agency's decision is supported by substantial evidence, the decision must be sustained by the reviewing court even where the evidence would support a contrary conclusion (see Matter of Haug v State Univ. of N.Y. at Potsdam, 32 NY3d 1044, 1045-1046 [2018]). The standard is a "minimal" one and is met by "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" (id. at 1045, 1046 [internal quotation marks and citations omitted]). Despite the absence of a written policy and the occasional release of horse names to other trainers during the "hustling" process, there is substantial evidence in this record to support respondent's determination that petitioner knowingly received confidential information as to horse names on a regular and extended basis in violation of NYRA policy and 9 NYCRR 4042.1 (f) (see Matter of Pena v New York State Gaming Commn., 32 NY3d 1122, 1123 [2018], revg for reasons stated in dissenting opinion below, 144 AD3d 1244, 1247-1252 [3d Dept 2016, McCarthy, J.P., dissenting]).
Finally, petitioner argues, and we agree, that the penalty of a three-year revocation of her license is so disproportionate to the offense and shockingly unfair as to constitute an abuse of discretion as a matter of law (compare Matter of Gonzalez v New York State Gaming Commn., 169 AD3d 1290, 1293 [3d Dept 2019]). As Supreme Court astutely recognized, NYRA bears much of the responsibility for what happened in this [*4]matter by fostering an aptly named "hustling" process without a defined written rule or diligent oversight. It is evident from the record that racing clerks would occasionally share the names of horses to entice trainers into entering their horses — all in NYRA's best interest to establish a full race card of 8 to 10 races a day. The key difference in petitioner's case is that she received the horse names on a regular, prolonged basis. What is particularly concerning is the disparity in testimony between NYRA's two racing secretaries, Panza and Campo, as to the significance of the rule violation. From Panza's perspective, petitioner's actions compromised the integrity of racing. Campo, who served as racing secretary throughout most of the disputed period, downplayed the issue. Campo observed that most of the trainers would already know which horses would be expected to run in certain races. Campo acknowledged that having the horse names would be an advantage "to a degree" but that such information would not affect anything. Most importantly, Campo opined that the public would not be "in any way misle[ ]d" — an observation that Camac also made. Not to be overlooked is that petitioner is the only trainer ever disciplined by respondent for this rule violation — a troublesome point given that petitioner is the only female trainer ever to win a training title at a New York track. Under these circumstances, we conclude that a license revocation is entirely unwarranted and, while we and petitioner take no issue with the monetary penalty, we remit the matter to respondent to reassess the penalty (see Matter of Lalima v New York State Dept. of State, 214 AD3d 1051, 1055 [3d Dept 2023]).
Clark, Aarons, Reynolds Fitzgerald and McShan, JJ., concur.
ORDERED that the order is affirmed, without costs.
ADJUDGED that the determination is modified, on the law, without costs, by annulling so much thereof as imposed a penalty of revocation of petitioner's training license; petition granted to that extent and matter remitted to respondent for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

Footnotes

Footnote 1: In June 2021, Supreme Court granted a temporary restraining order and stayed enforcement of respondent's determination pending a full resolution of the matter. This Court denied respondent's motion to vacate the temporary restraining order (2022 NY Slip Op 69823[U] [3d Dept 2022]).