Matter of Noda v New York State Gaming Commission (2024 NY Slip Op 06089)

Matter of Noda v New York State Gaming Commission

2024 NY Slip Op 06089

Decided on December 5, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 5, 2024

CV-23-1066
[*1]In the Matter of Orlando Noda, Petitioner,
v
New York State Gaming Commission, Respondent.

Calendar Date:October 7, 2024

Before:Egan Jr., J.P., Aarons, Pritzker, Lynch and McShan, JJ.

Andrew J. Mollica, Garden City, for petitioner.
Letitia James, Attorney General, Albany (Alexandria Twinem of counsel), for respondent.

Aarons, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Schenectady County) to, among other things, review a determination of respondent revoking petitioner's license to participate in thoroughbred racing for at least 90 days.
Petitioner is a thoroughbred horse trainer and exercise rider licensed by respondent. Based upon reports that petitioner used excessive force and abusive language when he repeatedly struck the horse he was training with a riding crop, petitioner was fined $5,000 for violating regulations promulgated by respondent. Among other things, the regulations authorize respondent to fine or suspend the license of any person who is "involved in any action detrimental to the best interests of racing generally" (9 NYCRR 4022.12) and prohibit "any improper, corrupt or fraudulent act or practice in relation to racing" (9 NYCRR 4042.1 [f]). Petitioner requested a hearing, after which the Hearing Officer found the evidence against petitioner was not sufficient to support the violations and recommended dismissal. Respondent rejected the Hearing Officer's recommendation, found that petitioner's violations had been established by a preponderance of the evidence, reinstated the $5,000 fine and suspended petitioner's license for at least 90 days. Petitioner then commenced this CPLR article 78 proceeding to review respondent's determination that he violated its regulations, which proceeding was transferred to this Court pursuant to CPLR 7804 (g).
We review an administrative determination issued after a legally mandated evidentiary hearing for substantial evidence (see CPLR 7803 [4]; Matter of Haug v State Univ. of N.Y. at Potsdam, 32 NY3d 1044, 1045 [2018]). "The standard is a minimal one and is met by such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" (Matter of Rice v New York State Gaming Commn., 217 AD3d 1098, 1101-1102 [3d Dept 2023] [internal quotation marks and citations omitted]; see Matter of Shuman v New York State Racing & Wagering Bd., 40 AD3d 385, 385 [1st Dept 2007]).
At the hearing, David Ingordo, a bloodstock agent, testified that, on the morning of August 5, 2021, as he watched horses train in the back of the Saratoga Race Course, he observed petitioner on a horse that was not moving. Ingordo stated that petitioner raised a riding crop above shoulder level and struck the horse with it at least seven times — he lost count after seven — while calling the horse a "piece of sh*t." As told by Ingordo, the horse was not misbehaving. Ingordo's account largely tracks the one conveyed by horse trainer Tom Bush to equine investigators and the stewards — one of whom wrote that Bush observed petitioner strike the horse with the crop for five minutes. According to the stewards, petitioner admitted that he struck the horse with a riding crop because "the horse wouldn't go." For his part, petitioner testified at the hearing that the horse [*2]froze and bucked, almost throwing him off. Petitioner struck the horse on the shoulder and hindquarters five or six times in an attempt to control the horse, but he denied that he did so aggressively and that he cursed at the horse while striking it.
Respondent chose not to credit petitioner's account, and, on this record, we defer to that credibility assessment (see Matter of Simpson v Wolansky, 38 NY2d 391, 394 [1975]; Matter of Hardy v Kraham, 224 AD3d 946, 948 [3d Dept 2024]; see generally Matter of Pedersen v New York State Racing & Wagering Bd., 46 AD3d 1072, 1073 [3d Dept 2007]; Matter of Sachs v New York State Racing & Wagering Bd., Div. of Harness Racing, 1 AD3d 768, 772 [3d Dept 2003], lv denied 2 NY3d 706 [2004]). Ingordo's testimony and Bush's statements concerning the severity of petitioner's treatment of the horse, which they did not see buck petitioner or otherwise pose a danger to him or others, establish that petitioner's conduct was detrimental to the best interests of racing generally and improper (see 9 NYCRR 4022.12, 4042.1 [f]). We therefore conclude that respondent's determination that petitioner violated its regulations is supported by substantial evidence (see Matter of Case v New York State Racing & Wagering Bd., 61 AD3d 1313, 1314 [3d Dept 2009], lv denied 13 NY3d 705 [2009]).
To the extent petitioner challenges respondent's application of 9 NYCRR 4022.12 and 4042.1 (f) to his conduct, we must defer to an "interpretation given to a regulation by the agency which promulgated it and is responsible for its administration . . . if that interpretation is not irrational or unreasonable" (Matter of 427 W. 51st St. Owners Corp. v Division of Hous. & Community Renewal, 3 NY3d 337, 342 [2004] [internal quotation marks and citations omitted]; see Matter of Myer Funeral Serv. Corp. v Zucker, 188 AD3d 1488, 1494 [3d Dept 2020]). In our view, it is not unreasonable to read said regulations as encompassing corporal punishment of a horse on the facts found by respondent (see 9 NYCRR 4022.12, 4042.1 [f]; see also 9 NYCRR 4022.13; cf. Matter of Lewis v New York State Racing & Wagering Bd., 100 AD3d 1196, 1197 [3d Dept 2012]).
Petitioner nevertheless argues that respondent's reading of "improper . . . act" in 9 NYCRR 4042.1 (f) is irrational because it ignores context. That section is titled "Prohibition of corrupt practices," and other paragraphs in that section prohibit bribes, entering a disqualified horse and using illegal equipment to affect a horse's speed or condition (see generally 9 NYCRR 4042.1). Given this context, petitioner asserts that respondent cannot pluck "improper . . . act" from the relevant paragraph's prohibition on "any improper, corrupt or fraudulent act or practice in relation to racing" and apply the rule to conduct like petitioner's that does not involve some form of deception or dishonesty. This theory is misguided, as respondent's interpretation of its regulation is not irrational just because it "might not [*3]be the most natural reading of the regulation, or that the regulation could be interpreted in another way" (Andryeyeva v New York Health Care, Inc., 33 NY3d 152, 177 [2019] [internal quotation marks and citation omitted]). The list of acts or practices prohibited by the regulation is disjunctive, and so respondent reads the relevant text as setting out three bases for liability — acts or practices that are improper or corrupt or fraudulent. Put another way, respondent just reads "improper . . . act" literally, as opposed to contextually, so as to include bad conduct in connection with racing that is not necessarily corrupt or fraudulent. We cannot say that respondent's literal interpretation of "improper . . . act" is irrational (see Eagles Landing, LLC v New York City Dept. of Envtl. Protection, 75 AD3d 935, 938 [3d Dept 2010], lv denied 16 NY3d 710 [2011]); thus, we may not use the tools of judicial interpretation to assign it a different meaning (see Andryeyeva v New York Health Care, Inc., 33 NY3d at 175).[FN1]
Petitioner next asserts that 9 NYCRR 4022.12 and 4042.1 (f) are unconstitutionally vague as applied to him. This is because exercise riders, jockeys and trainers routinely use riding crops to control a horse, and the regulations fail to give notice that petitioner's use of the crop was detrimental to the best interests of racing and improper and are susceptible to arbitrary enforcement. We are not persuaded. "Under the due process vagueness doctrine, regulatory provisions must give persons of ordinary intelligence within an affected profession fair notice of what conduct is prohibited" (Matter of Rice v New York State Gaming Commn., 217 AD3d at 1100 [citations omitted]). "[E]conomic regulation is subject to a less strict vagueness test" (Matter of Independent Ins. Agents & Brokers of N.Y., Inc. v New York State Dept. of Fin. Servs., 39 NY3d 56, 64 [2022] [internal quotation marks and citation omitted]). In our estimation, a racing professional like petitioner would understand that using a riding crop to persistently and forcefully strike a horse while cursing at it just because it "wouldn't go" during training is an act that is "detrimental to the best interests of racing generally" (9 NYCRR 4022.12; see Perez v Hoblock, 368 F3d 166, 176 [2d Cir 2004]) and "improper" (9 NYCRR 4042.1 [4]; see Matter of Rice v New York State Gaming Commn., 217 AD3d at 1100; see generally Matter of Fernandez v New York City Taxi & Limousine Commn., 193 AD2d 423, 423 [1st Dept 1993]). Because the regulations clearly apply to petitioner's conduct, his vagueness challenge must fail (see Holder v Humanitarian Law Project, 561 US 1, 19 [2010]; Hoffman Estates v Flipside, Hoffman Estates, Inc., 455 US 489, 495 & n 7 [1982]). Petitioner's remaining arguments have been assessed and are unavailing.
Egan Jr., J.P., Pritzker, Lynch and McShan, JJ., concur.
ADJUDGED that the determination is confirmed, without costs.

Footnotes

Footnote 1: Relatedly, petitioner has not shown that respondent's enforcement of the challenged regulations to penalize his conduct in this instance is an unexplained departure from its own precedent (see Matter of Charles A. Field Delivery Serv. [Roberts], 66 NY2d 516, 520 [1985]).